GENERAL REFINING & PRODUCING CO. *v.* DAVIDSON
COUNTY *et al.*

(*Nashville.* December Term, 1917.)

**LICENSES.** Privilege tax. Oil tanks.

Revenue Law (Laws 1915, chapter 101), imposing a tax on persons
having oil tanks, etc., for the purpose of selling, delivering, or
distributing oil, is inapplicable to a petroleum manufacturer
and refiner maintaining storage tanks merely as a part of its
manufacturing establishment and making only a manufacturer's
profit.

Cases cited and approved: Bell v. Watson, 71 Tenn., 328; Druggist
cases, 85 Tenn., 449; Memphis v. American Express Co., 102
Tenn., 336; Chattanooga Plow Co. v. Hays, 125 Tenn., 148; Gulf
Refining Co. v. Chattanooga, 136 Tenn., 505.

---

FROM DAVIDSON

---

Appeal from the Chancery Court of Davidson
County.—JAS. B. NEWMAN, Chancellor.

DOUGLAS & NORVELL, for appellant.

M. P. O'CONNOR and NORMAN FARRELL, JR., for
appellees.

MR. JUSTICE LANSDEN delivered the opinion of the
Court.

The bill in this case was filed to enjoin Davidson
county from proceeding to collect a privilege tax

139 Tenn.—26

from the complainant and to recover back a privilege tax of like amount which it had paid to the State under protest. The chancellor held that complainant was liable for the tax under consideration and dismissed its bill. It appealed to this court and has assigned errors.

We take the following statement of the facts of the case, together with the reasons assigned in support of the claim against complainant, from the brief of defendant's learned counsel:

"The appellant is engaged in manufacturing and refining petroleum and its by-products in Nashville. It maintains storage tanks in which the manufactured product is stored until sold. It sells its product at the refiner's price, not at the retailer's price.

"The only question presented in the record is: Is appellant liable for the privilege tax imposed by the Revenue Act of 1915?

"That act, so far as it is applicable to this controversy, reads as follows:

" 'Coal Oil, Illuminating Oil, or Lubricating Oil, or Petroleum Products.

" 'Each and every person, firm, partnership, corporation, or local agent having oil depots, storage tanks, or warehouses for the purpose of selling, delivering or distributing oil of any description, . . . shall pay a privilege tax as follows:

" 'In cities, towns or taxing districts of 30,000 inhabitants or over, or in territories within five

miles of the limit of such town, or taxing district, each per annum $500.'

"It is the insistence of the appellees that the keeping of storage tanks for the purpose of selling, delivering, or distributing oil is a privilege to be taxed within the meaning of the act, no matter whether the storage and sale be by a manufacturer who gets only a manufacturer's profit, or by a wholesaler or retailer who gets only a selling profit.

"The appellant in this case makes or refines the oil, keeps tanks in which it stores the oil, and sells the oil at the manufacturer's price.  The wholesaler buys the oil, stores it in tanks, and sells it at the wholesale price for a wholesaler's profit only.  The retail dealer buys the oil, stores it in tanks, and sells at the retail price for a retail profit only.

"Each of the three maintain storage tanks from which they sell oil, for only one profit each.  The wholesaler and retailer pay the tax.  Why should the manufacturer escape the tax merely because he refines the oil and puts it in tanks, while the others buy the oil and put it in tanks?  The source from which the refined oil is derived, i. e., manufactured or bought, can make no difference.  They are all equally covered by the language and intent of the act."

From this statement it will be observed that complainant uses storage tanks for the purpose only of storing crude oil, and the manufactured product, as containers for the purpose of confining the oil in order that it may sell it as a manufacturer.  Oil is

an elusive substance which must be confined in tanks as containers in order to preserve it. Open tanks are dangerous on account of fire, and the tanks employed are merely in use as containers. Thus it will be seen that the tanks and the storage of the oil in them are integral parts of complainant's business as a manufacturer. It cannot be denied that the refined oil is stored in the tanks for purposes of sale, but it is agreed that the sale contemplated by complainant is a sale for the purpose of realizing the manufacturer's profit. The complainant has paid a manufacturer's tax. *Bell* v. *Watson,* 3 Lea, 328; *Druggist Cases,* 85 Tenn., 449, 3 S. W., 490; *Memphis* v. *American Express Co.,* 102 Tenn., 336, 52 S. W., 172; *Chattanooga Plow Co.* v. *Hays,* 125 Tenn., 148, 140 S. W., 1068; *Gulf Refining Co.* v. *Chattanooga,* 136 Tenn., 505, 190 S. W., 463.

The principle underlying the above cases is that, if a construction can be given the statute levying the tax consistent with the language employed by the legislature so as to avoid double taxation, this construction will be given.

In the case under consideration, the legislature levied a privilege tax for having oil depots, storage tanks, or warehouses for the purpose of selling, delivering, or distributing oil. The fact merely of having oil depots, storage tanks, and warehouses is not sufficient to make one liable for the tax; but the depots, tanks, and warehouses must be kept primarily for the purpose of selling the oil. In this case, under

the agreed statement, the tanks are owned by the complainant as an integral part of its business of manufacturing oil and for the purpose only of containing the oil in order that complainant may realize the profits earned as a manufacturer. The oil tanks in this case are not different from the warehouses in the case of *Chattanooga Plow Co.* v. *Hays,* and the complainant is no more liable for a tax for keeping the tanks than the plow company was for a tax for having its warehouses.

We are not considering the power of the legislature to make the ownership of oil tanks in connection with the refining business a separate privilege, but what we are saying is that the language employed in the act under consideration does not do so. The tanks must be kept for "the purpose of selling, delivering or distributing oil" before the taxpayer is liable for the tax. If they are kept as an integral part of a business upon which the tax has been paid, we think the legislature did not mean to tax them. The decree of the chancellor is reversed, and the injunction prayed for is granted and made perpetual.