QUICK SERVICE TIRE COMPANY *v.* JESS G. SMITH, CLERK
*et al.**

(*Knoxville.* September Term, 1927.)

Opinion filed November 21, 1927.

### 1. TAXATION.   PRIVILEGE TAX.   OIL DEPOTS.

A storage tank for gasoline located adjacent to the railroad from
which gasoline is delivered to the owner's filling station is not
subject to the privilege tax imposed by our revenue law. (Post.
p. 100.)

Citing: Chapter 134, Acts of 1925.

### 2. TAXATION.   STORAGE TANKS.   PRIVILEGE TAX.

A storage tank maintained not as an independent business but
as an integral part of the business of operating a gasoline filling
and service station is expressly excluded from the provision of
the revenue law. (Post, p. 101.)

Citing: Chapter 134, Acts of 1925.

### 3. TAXATION.   GASOLINE DEALERS.   PRIVILEGE TAX.

The provisions of the revenue law apply alone to wholesale dealers
and those who sell gasoline to consumers from oil depots, storage
tanks or warehouses maintained as "a place of business." (Post,
p. 101.)

Citing: Chapter 75, Acts of 1923.

### 4. TAXATION.   GASOLINE PRIVILEGE TAX.

The revenue law does not impose a privilege tax upon gasoline
purchased and preserved in storage in a container used in con-
nection with the business of operating a filling station. (Post, p.
101.)

Citing: Chapter 75, Acts of 1923; General Refining Co. v. Davidson
County et al., 139 Tenn., 401.

5. TAXATION.  GASOLINE PRIVILEGE TAX.

The tax of three cents a gallon on gasoline in addition to all other taxes was imposed on those in the business of distributing and selling gasoline.  (Post, p. 101.)

Citing: Chapter 58, Acts of 1923; Foster & Creighton Co. v. Graham, 154 Tenn., 412.

6. TAXATION.  GASOLINE TAX.

An amendment to the former Act imposing a special privilege tax of three cents a gallon on gasoline also imposes the tax on all persons, firms or corporations, dealers or distributors, storing and distributing the same, and under this Act one storing gasoline for personal use could not avoid the tax.  (Post, p. 102.)

Citing: Chapter 67, Acts of 1925; Foster & Creighton Co. v. Graham, 154 Tenn., 412.

7. TAXATION.  PRIVILEGE TAX.  GASOLINE TAX.  DOUBLE TAXATION.

The Revenue Acts of 1923 and 1925 imposed a tax on service and retail gasoline stations, and the gasoline tax Acts of 1923 and 1925 do not impose double taxation for the exercise of the single privilege of conducting service and gasoline filling and retail stations.  (Post, p. 102.)

Citing: Chapter 75, Acts of 1923; Chapter 134, Acts of 1925; Gulf Refining Co. v. Chattanooga, 136 Tenn., 505.

8. TAXATION.  REVENUE LAW.  DUTIES OF OFFICERS.

The Revenue Law imposed a mandatory duty upon the county court clerk to enforce collection of delinquent taxes and penalties by a distress warrant without notice by preliminary proceedings to the taxpayer.  (Post, p. 103.)

9. TAXATION.  PAYMENT UNDER DURESS.

Payment of taxes is made under duress when the taxpayer has information that the collecting officer has in his hands process which will be levied on the property of the taxpayer to enforce collection of the tax.  (Post, p. 103.)

10. TAXATION.  PAYMENT UNDER PROTEST.

Where the taxpayer has information that an officer charged with collecting revenue has in his possession process to enforce the payment thereof, and that a levy will be made on his property,
156 Tenn.—7.

payment may be made under protest within the meaning of the law. (Post, p. 103.)

Citing: Shannon's Code, section 1061 (1917 Edition).

11. TAXATION.  PAYMENT UNDER PROTEST.  EVIDENCE.

Uncontradicted statements in a letter to a collecting officer stating that the tax is being paid under protest, and accompanied by check to pay the taxes, which facts are corroborated by the action of such officer sending a receipt carrying the endorsement that the tax was paid under protest, is sufficient evidence to protect the rights of the taxpayer. (Post, p. 103.)

Citing: Railroad v. Hamilton County, 120 Tenn., 232; Basket & Box Co. v. Lauderdale County, 146 Tenn., 413.

12. TAXATION.  PAYMENT OF.  VOLUNTARY OR INVOLUNTARY.

When an officer is clothed with power to impound property for the payment of a tax without any preliminary steps by a distress warrant, and where such officer is demanding payment of such tax, which is delinquent, exhibition of process is not essential to distinguish between voluntary and involuntary payment. (Post, p. 104.)

*Headnotes 1. Licenses, 37 C. J., section 78; 2. Licenses, 37 C. J., section 78; 3. Taxation, 37 Cyc., p. 755; 4. Licenses, 37 C. J., section 132; 5. Taxation, 37 Cyc., p. 1184.

FROM WASHINGTON.

Appeal from the Chancery Court of Washington County.—HON. S. E. MILLER, Chancellor.

MILLER & WINSTON, for appellee.

EPPS & EPPS, for appellant.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed against the defendant, Clerk of the County Court of Washington County, to recover State

and County taxes alleged to have been illegally exacted and paid under protest.

The Chancellor held that the Tire Company was not subject to the tax because it did not maintain an oil depot, defined and taxed by the Revenue Act of 1925. He also found that the tax was paid under circumstances amounting to duress and under protest, and decreed a recovery under Section 1061 of Shannon's Code.

The defendant appealed and through assignments of error insists that (1) the Chancellor's conclusion of fact that complainant was not operating an oil depot was erroneous. (2) That the tax was not paid under duress and protest, conditions essential to the right of recovery. (3) That recovery on behalf of complainant should have been denied and defendant decreed a recovery under the cross-bill for $4,453.75 delinquent taxes and penalty.

The undisputed facts are that prior to June 24, 1926, complainant was exclusively engaged in the business of operating a service station and gasoline filling station, and retailed gasoline to consumers at its filling station. At another place, by a railroad siding, the complainant kept a storage tank into which it unloaded gasoline from the railroad where it remained until drawn for use in its business at the filling station. The storage tank had a capacity of about 10,000 gallons, but gasoline was purchased only in single car lots of about 6,000 gallons, and was transferred from the car to the tank and only taken out by complainant, carried to the filling station, placed in smaller tanks from which it was drawn for delivery to customers in retail lots. None was delivered or sold from the larger tank. Complainant's object in buying gasoline in car lots was to avoid brokerage charges on purchases of small quantities and to enable it to obtain the benefit of wholesale prices so as to increase

the profits of its business at the filling station. Complainant could not buy in carload lots without a container either at its filling station or elsewhere into which the car lot shipment might be unloaded and kept pending sale in its retail business.

The Revenue Law, Chapter 134, Acts of 1925, provides:

"Each and every person, association of persons, firm, co-partnership, corporation or agent having or maintaining an oil depot as above defined within this State shall pay a special privilege tax for such place or depot (and shall keep on display to public view at each such place the original or certified copy of receipt showing payment of said special privilege tax) as follows: . . . If located in an incorporated city or town of less than 30,000 but more than 10,000 population, or within ten miles of the limits of such city or town, each depot, per annum ................................ $250.00."

Johnson City, where complainant is engaged in business, falls within the foregoing classification.

The Act further provides:

"The term 'Oil Depot' shall be understood to mean and include any place within this State where petroleum products or substitutes therefor are received in quantities equal to or greater than a railroad carload, and at or from which place said products are delivered, sold or offered for sale, to dealers therein or consumers thereof, in railroad carload quantities or less, including any railroad car, railroad depot, boat, barge, public or private storage warehouse, used for such purposes; provided, it shall not apply to automobile service stations or oil and gas filling stations."

(1) Express provisions of the Act exclude, as the subject of taxation, complainant's storage tank which it

maintained not as an independent business, but as an integral part of its business of operating a gasoline filling and service station.  The Act defines ''Oil Depots'' which are taxed as a place where gasoline is received in car lots and at or from which it is delivered, sold or offered for sale to dealers or consumers.  The complainant did not transfer the gasoline from cars to its storage tank to be sold or offered for sale to consumers.  The transfer from the car to the tank was a step in the transition from the car to the filling station.

(2)  It would require a strained construction, not justified by the language of the Act, to hold that a storage tank, used as a measure of thrift and profit as an integral part of complainant's retail business, was taxable as an Oil Depot.

(3)  It is insisted that a recovery should have been allowed under the cross-bill for $4,453.75, delinquent taxes and penalties under the Act of 1925, and Chapter 75, Acts of 1923.  By the Act of 1923, a tax of $300 per annum was imposed on those having Oil Depots, storage tanks or warehouses where gasoline was kept in excess of car lots for the purpose of selling, delivering or distributing gasoline.  This provision of the Statute, found on page 234 of the Act of 1923, is confined to wholesale dealers, and those who sell or distribute directly to consumers from the Oil Depot, storage tank or warehouse, maintained as ''a place of business.''  (4)  This Act does not apply to gasoline purchased and preserved by storage in a container used in connection with the business of operating a gasoline filling station.  *General Refining Co.* v. *Davidson County et al.*, 139 Tenn., 401.

(5)  *Foster & Creighton Co.* v. *Graham,* 154 Tenn., 412, is not in point.  By Chapter 58, Acts of 1923, Chapter 4, Acts of 1925, a special privilege tax of three cents

a gallon in addition to all other taxes was imposed upon those engaged in the business of distributing or selling gasoline. *(6)* By Chapter 67, Acts of 1925, the tax of three cents a gallon was made to apply not only to gasoline sold and distributed to consumers, but also "to persons, firms or corporations, dealers or distributors, storing . . . and distributing the same," and under this Act it was held in *Foster & Creighton Co.* v. *Graham, supra,* that one storing gasoline for personal use could not avoid payment of the tax of three cents a gallon on gasoline.

Complainant is subject to, and so far as the record shows has paid the tax of three cents a gallon on all gasoline sold and distributed by it at is filling station. *(7)* It was also subject to the tax imposed by the Revenue Act of 1923 and 1925 upon service and retail gasoline filling stations. No question is made about complainant's nonpayment of these taxes. The Acts of 1923 and 1925 indicate no intention to impose double taxation for the exercise of the single privilege of conducting service and gasoline filling stations and retailing gasoline. There is a presumption against legislative intention to assess double taxes, and the Statute will not be construed to impose double taxes unless clearly required by the language of the Act. *Gulf Refining Co.* v. *Chattanooga,* 136 Tenn., 505.

In February, 1926, the County Court Clerk demanded of complainant payment of the $250 annual tax imposed on Oil Depots by the Act of 1925. A controversy arose and the record contains correspondence between the parties and State officials charged with enforcement of the tax; and the record shows that the controversy resulted in a conclusion of the Comptroller that complain-

ant was liable for the tax, and that the County Court Clerk was moving to collect it.

(8)   Section 16, Chapter 134, Acts of 1925, imposes the mandatory duty upon County Court Clerks to enforce collection of delinquent taxes and penalties by distress warrant, a procedure that requires no notice by preliminary process.

It appears from the record without contradiction, that complainant stated in a letter addressed to the County Court Clerk with which he enclosed check to cover the tax demanded, by the Clerk that, "we want it clearly understood that this tax is paid under protest and duress because we are advised by you that such is delinquent, and unless it is paid, process which you hold in your hands will be levied upon the company to seize sufficient of its property to pay said tax, and that there is no legal means of protecting our property except payment under protest.   We, therefore, pay without prejudice to our right to bring suit under Section 1061 of Shannon's Code."

Upon receiving this letter containing the above statement, the County Court Clerk issued a receipt showing payment by complainant of $75, State taxes, $75 County taxes, and $1.50 fees, and endorsed upon the receipt that payment was made under protest.   The tax paid covered the period of six months.

(9) (10) (11)   Confronted by the situation indicated by this record, nothing was optional with the taxpayer, and payment under protest in the manner provided by Statute was the only means that could be adopted to avoid seizure of complainant's property.   A payment under such circumstances was not voluntary.   The uncontradicted statement in the letter corroborated by the action of the Clerk in sending a receipt carrying the endorse-

ment that the tax was paid under protest meets the rule stated in *Railroad* v. *Hamilton County,* 120 Tenn., 352, and is well within the more reasonable rule laid down in *Basket & Box Co.* v. *Lauderdale County,* 146 Tenn., 413.

*(12).* When an officer is clothed with power by the State to impound the property of a citizen, without any preliminary steps, by a distress warrant, and when such officer is demanding payment of a tax which is delinquent, exhibition of the process is not essential to distinguish between a voluntary and involuntary payment.

In our opinion the facts presented by this record brings the case clearly within the rule of *Basket & Box Co.* v. *Lauderdale County.* Affirmed.