288 U.S. 249 (1933)
NASHVILLE, CHATTANOOGA & ST. LOUIS RAILWAY CO.
v.
WALLACE, COMPTROLLER OF THE TREASURY OF TENNESSEE, ET AL.
No. 176.
Supreme Court of United States.
Argued December 12, 1932.
Decided February 6, 1933.
APPEAL FROM THE SUPREME COURT OF TENNESSEE.
*251 Mr. Fitzgerald Hall, with whom Mr. Frank Slemons was on the brief, for appellant.
Messrs. W.F. Barry, Jr., and Edwin F. Hunt, Assistant Attorneys General of Tennessee, with whom Mr. R.H. Beeler, Attorney General, was on the brief, for appellees.
*258 MR. JUSTICE STONE delivered the opinion of the Court.
Appellant brought suit in the Chancery Court of Davidson County, Tennessee, under the Uniform Declaratory Judgments Act of that state,[1] c. 29, Tennessee Public Acts, 1923, to secure a judicial declaration that a state excise tax levied on the storage of gasoline, c. 58, Tennessee Public Acts, 1923, as amended by c. 67, Tennessee Public Acts, 1925, is, as applied to appellant, invalid under the commerce clause and the Fourteenth Amendment of the Federal Constitution. A decree for appellees was affirmed by the Supreme Court of the State, and the case comes here on appeal under § 237 (a) of the Judicial Code.
*259 After the jurisdictional statement required by Rule 12 was submitted, this Court, in ordering the cause set down for argument, invited the attention of counsel to the question "whether a case or controversy is presented in view of the nature of the proceedings in the state court." This preliminary question, which has been elaborately briefed and argued, must first be considered, for the judicial power with which this Court is invested by Art. 3, § 1 of the Constitution, extends by Art. 3, § 2, only to "cases" and "controversies"; if no "case" or "controversy" is presented for decision, we are without power to review the decree of the court below. Muskrat v. United States, 219 U.S. 346.
In determining whether this litigation presents a case within the appellate jurisdiction of this Court, we are concerned, not with form, but with substance. See Fidelity National Bank v. Swope, 274 U.S. 123; compare Gasoline Products Co. v. Champlin Refining Co., 283 U.S. 494, 498. Hence, we look not to the label which the legislature has attached to the procedure followed in the state courts, or to the description of the judgment which is brought here for review, in popular parlance, as "declaratory," but to the nature of the proceeding which the statute authorizes, and the effect of the judgment rendered upon the rights which the appellant asserts.
Section 1 of the Tennessee Declaratory Judgments Act confers jurisdiction on courts of record "to declare rights . . . whether or not further relief is or could be claimed" and provides that "no action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect and such declaration shall have the force and effect of a final judgment or decree." By § 2 it is provided that "any person. . . whose rights, status or other legal relations are affected by a statute . . . may have determined any question of *260 construction or validity arising under the . . . statute . . . and obtain a declaration of rights . . . thereunder."
Under § 6, the Court may refuse to render a declaratory judgment where, if rendered, it "would not terminate the uncertainty or controversy giving rise to the proceeding." Declaratory judgments may, in accordance with § 7, be reviewed as are other orders, judgments or decrees, and under § 8 "further relief based on a declaratory judgment or decree may be granted whenever necessary or proper." Section 11 requires that "when declaratory relief is sought all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceeding."
This statute has often been considered by the highest court of Tennessee, which has consistently held that its provisions may only be invoked when the complainant asserts rights which are challenged by the defendant, and presents for decision an actual controversy to which he is a party, capable of final adjudication by the judgment or decree to be rendered. Miller v. Miller, 149 Tenn. 463; 261 S.W. 965; Goetz v. Smith, 152 Tenn. 451, 465; 278 S.W. 417; Hodges v. Hamblen County, 152 Tenn. 395; 277 S.W. 901; Cummings v. Shipp, 156 Tenn. 595; 3 S.W. (2d) 1062; Tennessee Eastern Electric Co. v. Hannah, 157 Tenn. 582, 587; 12 S.W. (2d) 372; Perry v. Elizabethton, 160 Tenn. 102, 106; 22 S.W. (2d) 359; Nashville Trust Co. v. Dake, 162 Tenn. 356, 359; 36 S.W. (2d) 905. It has also held that no judgment or decree will be rendered when all the parties who will be adversely affected by it are not before the Court. Harrell v. American Home Mortgage Co., 161 Tenn. 646; 32 S.W. (2d) 1023; Sadler v. Mitchell, 162 Tenn. 363, 367; 36 S.W. (2d) 891.
Proceeding in accordance with this statute, appellant filed its bill of complaint in the state Chancery Court, *261 joining as defendants the appellees, the Attorney General and the state officials charged with the duty of collecting the gasoline privilege tax imposed by the Tennessee statute. The complaint alleged that appellant is engaged in purchasing gasoline outside the state, which it stores within the state pending its use within and without the state in the conduct of appellant's business as an interstate rail carrier; that appellees assert that the statute taxes the privilege of storing gasoline within the state and is applicable to appellant; that they have demanded payment of the tax in a specified amount and have determined to enforce their demand and that, under the circumstances alleged, the statute as applied to appellant is invalid under the commerce clause and the Fourteenth Amendment. The relief prayed was that the taxing act be declared unconstitutional as applied to appellant. The Chancery Court sustained the appellees' demurrer to the sufficiency in law of the allegations relied on to establish the unconstitutionality of the tax. Its final decree dismissing the bill on the merits has been affirmed by the highest court of the state.
That the issues thus raised and judicially determined would constitute a case or controversy if raised and decided in a suit brought by the taxpayer to enjoin collection of the tax cannot be questioned. See Risty v. Chicago, R.I. & P. Ry. Co., 270 U.S. 378; compare Terrace v. Thompson, 263 U.S. 197; Pierce v. Society of Sisters, 268 U.S. 510; Euclid v. Ambler Realty Co., 272 U.S. 365. The proceeding terminating in the decree below, unlike that in South Spring Hill Gold Mining Co. v. Amador Medean Gold Mining Co., 145 U.S. 300; Muskrat v. United States, 219 U.S. 346, was between adverse parties, seeking a determination of their legal rights upon the facts alleged in the bill and admitted by the demurrer. Unlike Fairchild v. Hughes, 258 U.S. 126; Texas v. Interstate Commerce Commission, 258 U.S. 158; Massachusetts v. *262 Mellon, 262 U.S. 447; New Jersey v. Sargent, 269 U.S. 328, valuable legal rights asserted by the complainant and threatened with imminent invasion by appellees, will be directly affected to a specific and substantial degree by the decision of the question of law; and unlike Luther v. Borden, 7 How. 1; Field v. Clark, 143 U.S. 649; Pacific States Telephone & Telegraph Co. v. Oregon, 223 U.S. 118; Keller v. Potomac Electric Power Co., 261 U.S. 428; Federal Radio Commission v. General Electric Co., 281 U.S. 464, the question lends itself to judicial determination and is of the kind which this Court traditionally decides. The relief sought is a definitive adjudication of the disputed constitutional right of the appellant, in the circumstances alleged, to be free from the tax, see Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 724; and that adjudication is not, as in Gordon v. United States, 2 Wall. 561, and Postum Cereal Co. v. California Fig Nut Co., 272 U.S. 693, subject to revision by some other and more authoritative agency. Obviously the appellant, whose duty to pay the tax will be determined by the decision of this case, is not attempting to secure an abstract determination by the Court of the validity of a statute, compare Muskrat v. United States, supra, 361; Texas v. Interstate Commerce Commission, supra, 162; or a decision advising what the law would be on an uncertain or hypothetical state of facts, as was thought to be the case in Liberty Warehouse Co. v. Grannis, 273 U.S. 70, and Willing v. Chicago Auditorium Assn., 277 U.S. 274; see also Warehouse Co. v. Tobacco Growers Assn., 276 U.S. 71, 88; compare Arizona v. California, 283 U.S. 423, 463. Thus the narrow question presented for determination is whether the controversy before us, which would be justiciable in this Court if presented in a suit for injunction, is any the less so because through a modified procedure appellant has been permitted to present it in the state courts, without praying for an injunction *263 or alleging that irreparable injury will result from the collection of the tax.
While the ordinary course of judicial procedure results in a judgment requiring an award of process or execution to carry it into effect, such relief is not an indispensable adjunct to the exercise of the judicial function. Fidelity National Bank v. Swope, supra, 132. This Court has often exerted its judicial power to adjudicate boundaries between states, although it gave no injunction or other relief beyond the determination of the legal rights which were the subject of controversy between the parties, Louisiana v. Mississippi, 202 U.S. 1; Arkansas v. Tennessee, 246 U.S. 158; Georgia v. South Carolina, 257 U.S. 516; Oklahoma v. Texas, 272 U.S. 21; Michigan v. Wisconsin, 272 U.S. 398, and to review judgments of the Court of Claims, although no process issues against the Government. United States v. Jones, 119 U.S. 477; compare District of Columbia v. Eslin, 183 U.S. 62; Ex parte Pocono Pines Hotels Co., 285 U.S. 526, reported below in 73 Ct. Cls. 447. As we said in Fidelity National Bank v. Swope, supra, 132, "Naturalization proceedings, Tutun v. United States, 270 U.S. 568; suits to determine a matrimonial or other status; suits for instructions to a trustee or for the construction of a will; Traphagen v. Levy, 45 N.J. Eq. 448; 18 Atl. 222; bills of interpleader so far as the stakeholder is concerned, Wakeman v. Kingsland, 46 N.J. Eq. 113; 18 Atl. 680; bills to quiet title where the plaintiff rests his claim on adverse possession, Sharon v. Tucker, 144 U.S. 533; are familiar examples of judicial proceedings which result in an adjudication of the rights of litigants, although execution is not necessary to carry the judgment into effect, in the sense that damages are required to be paid or acts to be performed by the parties." See also Old Colony Trust Co. v. Commissioner, supra, 725; La Abra Silver Mining Co. v. United States, 175 U.S. 423.
*264 The issues raised here are the same as those which under old forms of procedure could be raised only in a suit for an injunction or one to recover the tax after its payment. But the Constitution does not require that the case or controversy should be presented by traditional forms of procedure, invoking only traditional remedies. The judiciary clause of the Constitution defined and limited judicial power, not the particular method by which that power might be invoked. It did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts. Whenever the judicial power is invoked to review a judgment of a state court, the ultimate constitutional purpose is the protection, by the exercise of the judicial function, of rights arising under the Constitution and laws of the United States. The states are left free to regulate their own judicial procedure. Hence, changes merely in the form or method of procedure by which federal rights are brought to final adjudication in the state courts are not enough to preclude review of the adjudication by this Court, so long as the case retains the essentials of an adversary proceeding, involving a real, not a hypothetical, controversy, which is finally determined by the judgment below. See Old Colony Trust Co. v. Commissioner, supra, 724. As the prayer for relief by injunction is not a necessary prerequisite to the exercise of judicial power, allegations of threatened irreparable injury which are material only if an injunction is asked, may likewise be dispensed with if, in other respects, the controversy presented is, as in this case, real and substantial. Such was the purport and effect of our decision in Fidelity National Bank v. Swope, supra, where it was held that a final judgment rendered by a state court in an adversary proceeding brought under a state statute to determine the validity of liens about to be imposed for benefits assessed under a city improvement ordinance, presented a case *265 within the appellate jurisdiction of this Court. Accordingly, we must consider the constitutional questions raised by the appeal.
Chapter 58, Tennessee Public Acts, 1923, as amended by Chapter 67, Tennessee Public Acts, 1925, is said, by its caption, to impose a privilege tax "on persons . . . and corporations engaged in or carrying on the business . . . of selling or storing or distributing gasoline . . ." within the state at the rate of 2 ¢ per gallon on the gasoline sold or stored, the tax "to be used solely in the construction and maintenance of a highway system in the state." But § 3 provides: "The tax imposed by this Act shall apply to persons, firms or corporations, dealers or distributors storing any of the products mentioned in this Act and distributing the same or allowing the same to be withdrawn from storage whether such withdrawal be for sale or other use. . . ." Storage of the gasoline and withdrawal of it from storage within the state for use or sale, are, as the state Supreme Court has held, the events which, by the very terms of the statute, call it into operation. Foster & Creighton Co. v. Graham, 154 Tenn. 412, 420; 285 S.W. 570; Quick Service Tire Co. v. Smith, 156 Tenn. 96, 102; 299 S.W. 807.
Appellant, an interstate rail carrier, purchases large quantities of gasoline outside the state of Tennessee and brings it into the state in tank cars, from which it is unloaded and placed in its own storage tanks. None of it is sold by appellant, but all is withdrawn and used by it as a source of motive power in interstate railway operation in Tennessee, Kentucky, Alabama and Georgia. Storage of the gasoline is a preliminary step to such use in interstate commerce. The tax is assailed both on the ground that it is imposed on the gasoline while still a subject of interstate commerce in the course of transportation from points of origin to points outside the state of Tennessee; and on the ground that it is in effect a tax upon *266 the use of the gasoline in appellant's business as an interstate carrier, and is thus an unconstitutional burden on interstate commerce.
The gasoline, upon being unloaded and stored, ceased to be a subject of transportation in interstate commerce and lost its immunity as such from state taxation. General Oil Co. v. Crain, 209 U.S. 211; Bacon v. Illinois, 227 U.S. 504; Susquehanna Coal Co. v. South Amboy, 228 U.S. 665, 669; Hart Refineries v. Harmon, 278 U.S. 499; Gregg Dyeing Co. v. Query, 286 U.S. 472. The fact that the oil was, in the ordinary course of appellant's business, later withdrawn from storage for use, some within and some without the state, part of it thus becoming again the subject of interstate transportation, did not affect the power of the state to tax it all before that transportation commenced. Neither the appellant, the shippers, nor the carrier, at the time of the shipment of the gasoline from points of origin, arranged a destination for any part of the oil other than the appellant's storage tanks in Tennessee. Although in the usual course of business a variable and undefined part of it, when segregated for that purpose, would again be transported across state boundaries, appellant was free to distribute the oil either within or without the state for use in its business or for any other purpose. As nothing in the transaction before the withdrawal from storage in Tennessee can be said to have given any ascertainable part of the gasoline a destination to points beyond the state, the case is distinguishable from Carson Petroleum Co. v. Vial, 279 U.S. 95, and Texas & New Orleans R. Co. v. Sabine Tram Co., 227 U.S. 111. The oil in storage was not a subject of interstate commerce and so was a part of the common mass of goods within the state, subject to local taxation. General Oil Co. v. Crain, supra; Susquehanna Coal Co. v. South Amboy, supra; Bacon v. Illinois, supra; compare Atlantic Coast Line R. Co. v. Standard Oil Co., 275 U.S. 257.
*267 We cannot say that the tax is a forbidden burden on interstate commerce because appellant uses the gasoline, subsequent to the incidence of the tax, as an instrument of interstate commerce. Taxes said to burden interstate commerce directly when levied upon or measured by the operation of interstate commerce or gross receipts derived from it, are beyond the state taxing power, East Ohio Gas Co. v. Tax Commission, 283 U.S. 465, 470; Sprout v. South Bend, 277 U.S. 163, 170, 171; Crew Levick Co. v. Pennsylvania, 245 U.S. 292, 297, and a tax levied upon the use of gasoline in generating motive power for a ferry boat used exclusively in interstate commerce has been held to be so direct and immediate a burden on the commerce itself as to be invalid. Helson v. Kentucky, 279 U.S. 245.
But interstate rail carriers are not wholly immune from other forms of non-discriminatory state taxation, even though the burden of the tax is thus indirectly or incidentally imposed upon the interstate commerce in which they are engaged. It cannot be doubted that, when the gasoline came to rest in storage, the state was as free to tax it, notwithstanding its prospective use as an instrument of interstate commerce, as it was to tax appellant's right of way, rolling stock or other instruments of interstate commerce, which are subject to local property taxes. Cudahy Packing Co. v. Minnesota, 246 U.S. 450; U.S. Express Co. v. Minnesota, 223 U.S. 335; Western Union Telegraph Co. v. Gottlieb, 190 U.S. 412; Adams Express Co. v. Ohio, 165 U.S. 194, 220; see General American Tank Car Corp. v. Day, 270 U.S. 367; Interstate Busses Corp. v. Blodgett, 276 U.S. 245, compare St. Louis-San Francisco Ry. Co. v. Middlekamp, 256 U.S. 226, 231; St. Louis, Southwestern Ry. v. Arkansas, 235 U.S. 350; Kansas City, F.S. & M. Ry. Co. v. Botkin, 240 U.S. 227; Kansas City, M. & B.R. Co. v. Stiles, 242 U.S. 111; Southern Ry. Co. v. Watts, 260 U.S. 519. The power to *268 tax property, the sum of all the rights and powers incident to ownership, necessarily includes the power to tax its constituent elements. See Bromley v. McCaughn, 280 U.S. 124, 136-138. Hence, there can be no valid objection to the taxation of the exercise of any right or power incident to appellant's ownership of the gasoline, which falls short of a tax directly imposed on its use in interstate commerce, deemed forbidden in Helson v. Kentucky, supra. Here the tax is imposed on the successive exercise of two of those powers, the storage and withdrawal from storage of the gasoline. Both powers are completely exercised before use of the gasoline in interstate commerce begins. The tax imposed upon their exercise is therefore not one imposed on the use of the gasoline as an instrument of commerce and the burden of it is too indirect and remote from the function of interstate commerce itself to transgress constitutional limitations. See Eastern Air Transport v. Tax Commission, 285 U.S. 147.
Appellant objects that the tax violates the Fourteenth Amendment in that it is levied as a charge for the use of the highways which appellant does not use. But the levy is a tax, not a toll or charge for use of the highways, see Carley & Hamilton v. Snook, 281 U.S. 66, and the constitutional power to levy taxes does not depend upon the enjoyment by the taxpayer of any special benefit from the use of the funds raised by taxation. Carley & Hamilton v. Snook, supra; St. Louis & Southwestern Ry. Co. v. Nattin, 277 U.S. 157, 159. The allegations of the bill showing that a heavier burden of taxation is imposed upon railroads than upon common carriers by motor bus, examined in the light of the applicable statutes of the State, fall short of alleging a discrimination forbidden by either the commerce clause or the Fourteenth Amendment.
Affirmed.
NOTES
[1] The procedure authorized by this statute has been extensively adopted both in this country and abroad. It is said that the Uniform Act is in force in 16 of the States and Porto Rico and that similar statutes have been enacted in 13 States, Hawaii and the Philippines. For a discussion of the history of this procedural device in France, Germany, Spain, Spanish America, Scotland, England and India, as well as in the United States, and the types of controversies in which it has been invoked, see Edwin M. Borchard, The Declaratory Judgment  A Needed Procedural Reform, 28 Yale L.J. 1, 105; Judicial Relief from Peril and Insecurity, 45 Harv. L. Rev. 793, 806; The Constitutionality of Declaratory Judgments, 31 Columbia L. Rev. 561.