### ELBERT v. LUMBERMEN'S MUT. CAS. CO.
### No. 3548.

United States District Court,
W. D. Louisiana, Shreveport Division.

Oct. 30, 1952.

John N. Madison, Shreveport, La., Whitfield 'Jack, Shreveport, La., for plaintiff.

Charles L. Mayer, Jackson, Mayer & Kennedy, Shreveport, La., for defendant.

On Motion for Rehearing

DAWKINS, Chief Judge.

Plaintiff has sought a rehearing in this case because of the decision of the Court of Appeals for this Circuit in Cushing v. Maryland Casualty Company, 198 F.2d 536, 537.

In that case, jurisdiction was invoked under both Section 33 of the Merchant Marine (Jones) Act of 1920, 46 U.S.C.A. § 688, and Section 655 of Title 22 of the Louisiana Statutes Annotated—Revised Statutes, usually called the direct action law. The suits were by the beneficiaries of deceased seamen who lost their lives in a collision by a tug owned by their employer with a railroad bridge belonging to the Texas & Pacific Railway Company. Defendants were the Railroad and the insurers, alone, against liability of the owners of the tug for injury and death of seamen. This insurance policy also covered death by accidental means and applied solely to the employees of the owner of the tug. The complaints charged negligence on the part of the operators of both the tug and the bridge.

The trial court sustained a motion to dismiss the demands against the insurance companies under the State Direct Action Statute, on the ground that the matter was cognizable solely, in admiralty jurisdiction and the State law did not apply. The Court of Appeals reversed that ruling, stating the issues as follows:

"The dominant question is whether or not the statute [Sec. 655, La.Rev. Stat. of 1950] applies to policies which protect the owner and charterer of a vessel against liability for *personal*

*injuries or accidental death suffered by the crew of a vessel in navigable waters.*" (Emphasis by the writer.)

In disposing of the case, the Court, among other things, said:

"While Sec. 655, supra, confers upon an injured party a *substantive* right which becomes vested at the moment of the injury, it is not a right essentially maritime in character * * *. The statute provides *only an additional and cumulative remedy* at law in the enforcement of obligations of indemnity voluntarily and lawfully assumed by the insurer" and that it "does not conflict with any feature of substantive admiralty law, nor with any *remedy* peculiar to admiralty jurisdiction. These suits are at law, not in admiralty." (Emphasis by the writer.)

It is hard to understand how a law can confer "a substantive right" and yet provide "*only* an additional and cumulative remedy". In Fisher v. Home Indemnity Company, 5 Cir., 198 F.2d 218, the same court of appeals, with Judge Hutcheson as its organ, had held that Sec. 655 created a substantive right, not a remedy, insofar as it attempted to give a direct action against the insurer alone, the enforcement of which as to contracts validly made in other states would violate the Federal Constitution.

Further on in the Cushing case, it **is** said:

"Appellees, the insurers, further contend that the 'Jones Act, 46 U.S.C.A. § 688, *creates a right of action against an injured seaman's employer, but not against the employer's liability underwriter,* and that the State of Louisiana can not add to the rights created by the Jones Act. It is unnecessary, however, to determine that question. Even if there were no jurisdiction, nor any right of action, under the Jones Act, which we do not decide, diversity of citizenship exists between all plaintiffs and the defendant insurers, and more than $3,000.00 is involved in each suit. *These circumstances support federal jurisdiction. The complaints contain averments which sufficiently assert liability upon general principles of negligence, and also for accidental death within the coverage of the policies sued upon, so that a cause of action is stated.*" (Emphasis by the writer.)

Actions for death were unknown to the common law. In Louisiana the right to sue for personal injuries or death is purely statutory, and the liability created is confined to the person or persons at fault. The insurer, or persons secondarily liable, are not included, nor does Sec. 655 purport to make it an additional tort feasor. It simply authorizes the injured person or his heirs, at their option, to bring a direct proceeding against the insurer alone or against the insurer and insured together on the one cause of action created by the Code, and otherwise specifically preserves all other terms of the policy. Therefore, any such suit by a third person against the insurer must necessarily arise from an implied subrogation to the rights of the insured under his policy to demand of the insurer that it discharge his liability once it is established. Certainly the insured himself has no cause of action to sue his insurer until the controversy as to whose fault, under Art. 2315 of the LSA–Civil Code, caused the injury, is determined; nor can that right of action of the subrogee, the injured person, it would seem, rise any higher than that of the insured, that is, to require payment by the insurer of the judgment against the insured.

In Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 61 S.Ct. 510, 511, 85 L.Ed. 826, the court stated the circumstances as follows:

"Petitioner issued a conventional liability policy to the insured, the Pacific Coal & Oil Co., in which it agreed to indemnify the insured for any sums the latter might be required to pay to third parties for injuries to person and property caused by automobiles hired by the insured. Petitioner also agreed that it would defend any action covered by the policy which was brought against the insured to recover damages for such injuries.

"While the policy was in force, a collision occurred between an automo-

bile driven by respondent Orteca and a truck driven by an employee of the insured. Orteca brought an action in an Ohio state court *against the insured* to recover damages resulting from injuries sustained in this collision. Apparently this action has not proceeded to judgment.

"Petitioner then brought this action against the insured and Orteca. Its complaint set forth the facts detailed above and further alleged that at the time of the collision the employee of the insured was driving a truck sold to him by the insured on a conditional sales contract. Petitioner claimed that this truck was not one 'hired by the insured,' and hence that it was not liable to defend the action by Orteca against the insured or to indemnify the latter if Orteca prevailed. It sought a declaratory judgment to this effect against the insured and Orteca, and a temporary injunction restraining the proceedings in the state court pending final judgment in this suit." (Emphasis by the writer.)

Orteca demurred to the complaint on the ground that it did not "state a cause of action against him", which was sustained by the trial court and affirmed by the Court of Appeals in 111 F.2d 214. In disposing of the matter, the Supreme Court said:

"The question is whether petitioner's allegations are sufficient to entitle it to the declaratory relief prayed in its complaint. This raises the question whether there is an '*actual controversy*' within the meaning of the Declaratory Judgment Act, Judicial Code § 274d, 28 U.S.C. § 400, 28 U.S.C.A. § 400, since the District Court is without power to grant declaratory relief unless such a controversy exists. Nashville, [C. & St. L.] Ry. Co. v. Wallace, 288 U.S. 249, 259, 53 S.Ct. 345, 346, 77 L.Ed. 730, 87 A.L.R. 1191; U.S.C.A. Constitution, Art. III, § 2.

"The difference between an abstract question and a 'controversy' contemplated by the Declaratory Judgment Act is necessarily one of degree, and it would be difficult, if it would be possible, to fashion a precise test for determining in every case whether there is such a controversy. *Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality* to warrant the issuance of a declaratory judgment. See Aetna Life Ins. Co. [of Hartford] v. Haworth, 300 U.S. 227, 239–242, 57 S.Ct. 461, 463, 464, 81 L.Ed. 617, 108 A.L.R. 1000. *It is immaterial that frequently, in the declaratory judgment suit, the positions of the parties in the conventional suit are reversed; the inquiry is the same in either case.* Nashville, [C. & St. L.] Ry. Co. v. Wallace, supra, 288 U.S. [at] page 261, 53 S.Ct. [345] page 347, 77 L.Ed. 730, 87 A.L.R. 1191.

"That the complaint in the instant case presents such a controversy is plain. Orteca is now seeking a judgment against the insured in an action which the latter claims is covered by the policy, and sections 9510–3 and 9510–4 of the Ohio Code (Page's Ohio General Code, Vol. 6, §§ 9510–3, 9510–4) *give Orteca a statutory right to proceed against petitioner by supplemental process and action if he obtains a final judgment against the insured which the latter does not satisfy within thirty days after its rendition.* Compare Maryland Casualty Co. v. United Corporation, 1 Cir., 111 F.2d 443, 446; Central Surety & Insurance Corp. v. Norris, 5 Cir., 103 F.2d 116, 117; United States Fidelity & Guaranty Co. v. Pierson, 8 Cir., 97 F.2d 560, 562. Moreover, Orteca may perform the conditions of the policy issued to the insured requiring notice of the accident, notice of suit, etc., in order to prevent lapse of the policy through failure of the insured to perform such conditions. Hartford Accident & Indemnity Co. v. Randall, 125 Ohio St. 581; 183 N.E. 433; see, also, Lind v. State Automobile Mutual Insurance Association, 128 Ohio St. 1, 190 N.E. 138; State Auto-

mobile Mutual Insurance Association v. Friedman, 122 Ohio St. 334, 171 N.E. 591.

"*It is clear that there is an actual controversy between petitioner and the insured.* Compare Aetna Life Ins. Co. [of Hartford] v. Haworth, supra. *If we held contrariwise as to Orteca because, as to him, the controversy were yet too remote, it is possible that opposite interpretations of the policy might be announced by the federal and state courts. For the federal court, in a judgment not binding on Orteca, might determine that petitioner was not obligated under the policy, while the state court, in a supplemental proceeding by Orteca against petitioner, might conclude otherwise.* Compare Central Surety & Insurance Corp. v. Norris, supra, 103 F.2d [at] page 117; Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, 670." (Emphasis by the writer.)

Of course, the real controversy in that case, as between the insurer and the injured person, Orteca, was not whose fault caused the accident but whether the policy covered it as contended by both Orteca and the insured, and that was the sole basis upon which the Supreme Court rested its conclusion that a federal court had jurisdiction under the declaratory judgment statute, Sec. 400, Tit. 28 U.S.C. [1948 Revised Judicial Code, 28 U.S.C.A. §§ 2201, 2202], between citizens of different states. Hence, without that issue of coverage, it seems clear that the court would have ruled otherwise. The effect of the decision is that the insurer could not have maintained the suit for declaratory judgment against Orteca alone upon the controversy as to liability between him and the insurer as such, without this allegation of non-coverage, wherein it contended the terms of its policy did not obligate it to defend or to indemnify the insured under the facts which were charged in the complaint for the declaratory judgment. If the insurer in a suit wherein there was unquestioned diversity between it and the injured person could not maintain a cause of action independently and alone against the latter, because

of the absence of any real controversy between it and the insured, how can it be said that the injured person could invoke federal jurisdiction against the insurer alone on the same state of facts? Could there be any "actual controversy" in the one instance and not in the other?

The Court of Appeals for the Fourth Circuit, with Chief Judge Parker as its organ, had occasion to decide a closely related question in two well considered cases, to wit: State Farm Mutual Automobile Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 132 A.L.R. 188, and Maryland Casualty Co. v. Boyle Const. Co., 4 Cir., 123 F.2d 558. In the first of these, Hugee's case, the plaintiff insurance company brought an action for a declaratory judgment, in circumstances stated by the court as follows [115 F.2d 299]:

"Plaintiff is an insurance company of the State of Illinois. It had issued a policy of automobile liability insurance to Patton's, Inc., one of the defendants, a South Carolina corporation, operating a laundry in that state. The policy covered a laundry truck of Patton's while being operated for commercial purposes, and one of its clauses provided that plaintiff would defend any suit for damages against Patton's arising out of the operation of the truck, even though such suit should be 'groundless, false or fraudulent'. Other defendants are citizens of South Carolina who were injured in a collision between the truck and a bus, the driver of the bus, the bus companies which owned and operated the bus, and the administrator of the truck driver, who was killed in the collision.

"The complaint as amended alleged that the truck was not being operated for commercial purposes at the time of the collision but was being operated by the driver, one McRae, 'for purposes purely personal to himself'; that claims for damages arising out of the collision were not within the coverage of the policy for that reason; that Patton's had demanded that plaintiff defend any claims made against it in connection with the collision; that

claims had been filed against Patton's by persons injured; that suits were about to be brought on the claims against Patton's; and that in the event of recovery in these suits claims would be made against plaintiff under the policy. It is alleged also that plaintiff would be required to employ counsel to defend the suits against Patton's and averred that the court was empowered under the Declaratory Judgment Act 'to determine herein, for the benefit of all parties plaintiff and defendant, whether in fact and in law, at the time of the aforementioned incident (accident), the defendant, Patton's, Inc., is liable to the other defendants herein or any of them, and accordingly whether, under the same facts and circumstances, any liability attaches under the terms of plaintiff's policy to the defendant, Patton's Inc., and to the other defendants and in that regard the plaintiff alleges that under a proper construction of the terms of its aforesaid policy, under the facts above set forth, no liability under said policy exists, and that this plaintiff should not be put to the expense of litigating said question in the numerous individual suits that will be brought against Patton's, Inc., and against the representatives of the McRae estate involving that identical issue, but that said issue should be adjudicated herein and the question of the plaintiff's liability under the terms of its aforesaid policy should be declared in this cause.' "

There the plaintiff also raised the question of coverage of its policy, but made its insured a party, and the latter joined in the claim that there was no coverage. It became necessary to align the insured on the same side as the plaintiff, and other defendants, being citizens of the same state, there was no diversity as between all plaintiffs and defendants, and it was dismissed for want of jurisdiction. Whereas, in the Maryland Casualty Co. v. Pacific Coal & Oil Co., there was an issue between the insurer and insured as to whether the latter was protected by the policy. After

citing and reviewing numerous authorities, Judge Parker said:

"A case such as this is to be distinguished from *one where there is a bona fide controversy between the nonresident insurance company and the insured, and where one holding a claim against the insured is brought in for the purpose of securing a complete settlement of the entire controversy. In such case the non-resident company is entitled to invoke the jurisdiction of the federal courts for the purpose of settling the controversy with the resident insured; and the fact that another resident may be joined for the purpose of obtaining a complete settlement of the controversy does not oust the jurisdiction.* Such a case was before this court in Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 99 F.2d 665, where there was a controversy between the company and the insured which would not necessarily be decided in a suit between the claimant and the insured and where the interests of the company and the insured would be diverse in defending a suit instituted by the claimant. Such a case also was Farm Bureau Mutual Automobile Ins. Co. v. Daniel, 4 Cir., 92 F.2d 838, where there was a bona fide controversy between the company and the insured and another company as to the coverage of the policy. *Very different is the case where, as here, the interest of the insurer in the litigation is identical with that of the insured and where there is no bona fide controversy of any sort between them. The liability of the insurer to the insured manifestly does not constitute a controversy where the insurer admits it; and the insurer may not use that liability as a means of trying in the federal court litigated claims which it has obligated itself to defend and which are properly cognizable in state tribunals.* Cf. Steele v. Culver, [211 U.S. 26, 29 S.Ct. 9, 53 L.Ed. 74] supra. To quote again the language of Mr. Justice Holmes in that case, 'It seems * * * strange to suggest that a contract of a stranger

with a stranger can affect the interest of the party immediately concerned.' " (Emphasis by the writer.)

In the second case, Maryland Casualty Co. v. Boyle Const. Co., supra [123 F.2d 562], the situation was identical with Hugee, and the following is quoted:

"As we pointed out in the Hugee case, if there were a bona fide controversy between plaintiff and the insured, a different situation would be presented; for in such case the basis for a realignment of parties would be absent. If, for example, there were a bona fide controversy over the meaning or coverage of the policy or over the question of its validity or expiration, it would no doubt be proper to invoke the power of the court to render a declaratory judgment against the insured and to join the claimant against the insured as a party defendant, so that there might be a complete settlement of the controversy. Of course the plaintiff has a justiciable controversy with the claimant, and there is diversity of citizenship between plaintiff and the claimant; *but insured is an indispensable party to any suit to settle that controversy (Steele v. Culver, 211 U.S. 26, 29 S.Ct. 9, 53 L.Ed. 74) and the joinder of insured defeats the jurisdiction, since its interest in the controversy is identical with that of plaintiff and it is a citizen of the same state as the claimant.*" (Emphasis by the writer.)

In Steele v. Culver, 211 U.S. 26, 29 S.Ct. 9, 53 L.Ed. 74, the plaintiff corporation sued to annul a judgment against itself and its principal on a bond in the State Court wherein complainant had become the surety on appeal. The ground for annulling the judgment was that it had been obtained by fraud. The principal, or defendant in the judgment in the State Court, was made a party, but there was no prayer for relief against it. In disposing of the matter, the court had this to say:

"It is suggested that the controversy as to the judgment against the security company is separable, and that relief may be given against that, at least, without the presence of the railroad. But the only ground on which that judgment is complained of is that that against the railroad, upon which it is based, was obtained by perjury and fraud. So long as the judgment against the railroad stands, that against its surety cannot be impeached. By its bond the surety undertook to pay the judgment, if rendered, against its principal, whether right or wrong. If the principal remains liable under that judgment, the surety is bound to pay. Krall v. Libbey, 53 Wis. 292, 10 N.W. 386; Piercy v. Piercy, 36 N.C. (1 Ired. Eq.) 214, 218. *But the principal cannot be relieved by a proceeding behind its back.*" (Emphasis by the writer.)

In a case like the present, brought on the authority of the State statute, Sec. 655, LSA-R.S., Tit. 22, if the insurer is either condemned or relieved of liability, it would be in a "proceeding behind the back" of the insured, involving a controversy wherein his negligence or that of his agents was the sole controversy; yet any such judgment could not be enforced against him, except in a new suit, if the insurer by chance became insolvent and unable to pay. It would seem, therefore, that the insured, for this reason also, is an indispensable party to any suit to establish his liability, which first must be done before the insurer can be forced to pay. Otherwise the real controversy or issue of negligence on the part of the insured remains undetermined as to him.

Other considerations under the Louisiana law appear to demonstrate that the real controversy is between the complainant and the tort feasor. It often happens that the injured person is covered by compensation insurance. If he is injured or killed in the course of his employment, such as driving his employer's vehicle, the compensation insurer pays the compensation. In such instances, the law of the State permits the compensation insurer (who is not included in Sec. 655 as having a direct action against the insurer of the tort feasor) to intervene in a suit by the employee against the alleged tort feasor for reimbursement out of any recovery, for payments so made. The basic right of action by the injured person

is as stated, legal subrogation to the right of the insured to require the insurer to pay, to the extent of its policy, after it has been found that the insured's fault caused the damage. This right of the compensation insurer to maintain its action also arises from legal subrogation to the rights of the employee against the third person, not his insurer, who is guilty of negligence. Thus, we find the compensation insurer, in a suit against the insurer alone, asserting a subrogation to the subrogation of the compensation employee to the contractual rights of the insured third person against his own insurer under his policy. Since those contractual rights do not become enforceable until his liability has been judicially established, it seems clear that the real controversy which this court is called upon to decide is that between the complainant and the third person whose fault he alleges caused his damage. *No one can recover in such an action until the issue of fault or negligence,* as between the injured person or his employer, where the latter's vehicle is also involved, and the third person, has been determined; yet this optional direct action statute attempts to substitute the foreign insurer alone, in the place of the third person alleged tort feasor. To defend such a suit, the insurer not being present when the accident occurs and having no information of its own, must depend upon its insured or his agents as to the facts. Feeling secure under the protection of his insurance, the insured is not actuated by the compulsion of vigilance of one faced with the risk of a large judgment against himself. See Merchants Mutual Automobile Liability Ins. Co. v. Smart, 267 U.S. 126, 129, 45 S.Ct. 320, 69 L.Ed. 538. In other words, the insurer is forced to take over and defend, alone, the conduct of its insured in a controversy to which it is not the real party, and in a proceeding which entirely ignores the wrong-doer.

Further circumstances appear to demonstrate that the real controversy is between the complainant and the tort feasor. If it transpires that the employer of the complainant, in the situation just described, has suffered property loss as a result of the same accident in which the employee was injured or killed, and for which the insurer of the third person has been sued, is not joined in the suit, there is nothing to prevent him from bringing his own independent action against such third person, or his insurer, which would again involve the identical controversy as to fault. On the other hand, if the injured person were required to sue the actual wrong-doer instead of his insurer, the controversy as to whose negligence caused the accident could be determined finally in a single action as to all of those concerned.

Again, the courts of Louisiana have held that if the injured person sees fit to sue a single alleged tort feasor or his insurer, as they often do, where two or more persons or their insurers are involved, the one so sued, or his insurer, cannot bring in the others or have recourse against their insurers until he has been condemned and has paid the whole judgment, thus necessitating another suit for contribution. Yet, if the Federal Court has unquestioned jurisdiction of the actual controversy, the Rules of Federal Procedure, 28 U.S.C.A., expressly provide for the bringing in of such other wrong-doers as third parties defendant for the settlement of the rights of all concerned at one time.

It is also well to call attention to the well known fact that in most of these suits in the Federal Courts of this State, the complainants allege damages greatly in excess of the maximum limits of the policies sued upon. The reason is obvious. The complainant wishes to impress the jury that he is insufficiently protected and should recover at least the full amount of the policy. Yet these suits are often filed against the insurer alone where the insured is financially able to respond in an amount exceeding the insurance, but, nevertheless, the action is brought against the insurer alone and the complainant thereby waives the right to pursue the alleged wrong-doer thereafter.

Sec. 655 of Title 22, LSA–R.S., not only gives the injured person the option to sue the insurer of the alleged wrong-doer alone, it also permits him to sue the insured alone, or with his insurer in a single action as he sees fit. In any event, no matter who he

names among these three choices as the party or parties defendant, it is the same cause of action which is created by the Article 2315 of the LSA–Civil Code. As before stated, the only parties to that controversy, under this codal provision, in any case, are the injured party and the alleged wrong-doer, and, since jurisdiction in the Federal Court, based upon diversity of citizenship, means the citizenship of the real parties to the controversy, the presence of the alleged tort feasor as the defendant is indispensable in any such action brought in this court to determine responsibility for the accident.

Finally, as sustaining the idea that it was never intended that citizens of the state in which the suit is brought should have the right to invoke the jurisdiction of the Federal Courts, on the ground of diverse citizenship, is the rule settled by statute and decisions that when sued by a non-resident, these citizens of the State cannot remove their cases to this court. Glover Machine Works v. Cook Jellico Coal Co., D.C., 222 F. 531; Sheets v. Shamrock Oil & Gas Co., 5 Cir., 115 F.2d 880, Id., 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214. The plaintiff has but one cause of action no matter how many persons were involved or responsible for the accident. Bentley v. Halliburton Oil Well Cementing Co., 5 Cir., 174 F.2d 788.

The re-hearing is denied.