**BETHLEHEM SHIPBUILDING CORPORA-TION, Limited, v. NYLANDER et al.**

No. 818.

District Court, S. D. California, Central Division.

April 3, 1936.

O'Melveny, Tuller & Myers, Louis W. Myers, and H. I. Mitchell, all of Los Angeles, Cal., for complainant.

Peirson M. Hall, U. S. Atty., and Clyde Thomas, Asst. U. S. Atty., both of Los Angeles, Cal., for defendants.

**STEPHENS, District Judge.**

*The Pleadings.*

The corporate complainant is a citizen of the state of Delaware, with offices in Bethlehem, Pa. It bases its claim herein for equitable relief and for a declaratory judgment upon allegations that the three defendants above named will exercise certain functions in the matter of holding a hearing at Los Angeles, Cal., under the so-called Wagner Act, or, as it is sometimes called, the National Labor Relations Act (title 29, U.S.C.A. sections 151–161, July 5, 1935), herein generally referred to as the act. The defendants are sued in, and are accused of acting in, three distinct capacities: Nylander, individually and as regional director and as the National Labor Relations Board; McWilliams, individually and as trial examiner and as the said Board; Janofsky, individually and as attorney for and as such Board. In no other manner is the Board or are the members of the Board named as parties. The said Board, which shall hereinafter be referred to as the Board, consists of three members, each a citizen of a state different from that of the other two. The headquarters of the Board proper are in the District of Columbia.

The hearing referred to is entitled "United States of America Before the National Labor Relations Board Twenty-first region, In the Matter of Bethlehem Shipbuilding Corporation, Limited, and Industrial Union of Marine and Shipbuilding Workers of America No. 9."

Upon the filing of the bill of complaint in this court, an order was issued commanding defendants to show cause why they should not be restrained from performing any acts in furtherance of such hearing. The defendants filed a joint return, a motion to dismiss, and several affidavits.

The cause was submitted for decision after it had been thoroughly briefed and exhaustively argued, and, after a full consideration of the points and authorities, I have come to the conclusion that no relief can be granted complainant. The pertinent facts will develop with the treatment of the several points treated in the opinion.

*Mechanics of Board Action.*

The action in the jurisdiction of the Board is not taken by a complainant against a defendant as in a court, but the Board or its regional agent is informed of claimed violations of the act, and in the discretion of the regional director or of the Board, the former in this case, a complaint is filed and served on the parties concerned. The party against whom the complaint has been lodged is denominated the respondent, and he may file his reply, have process, present witnesses, et cetera. After the testimony has been taken it is transmitted in written form to the Board and the Board determines therefrom whether or not an order to "cease and desist" in alleged "Unfair Labor Practices" shall issue. If such order issues and the respondent does not comply therewith, the Board may apply to the Circuit Court (under certain limited circumstances to the District Court) for appropriate action for enforcement of its order. Any person aggrieved by the order may also apply to such court. Such court may order additional evidence to be taken before the Board, but "the findings of the Board as to the facts, if supported by the evidence, shall be conclusive." The Supreme Court of the United States may review proceedings by certiorari. It is the contention of defendants here that no other court procedure is open to respondents except in relation to subpœna in such hearing, and I shall notice this question later on.

*Cause of Complaint.*

The respondent in the Board case, the complainant here, claims that the whole act is unconstitutional and void, and that it invades complainant's constitutional rights in several particulars and that the maintainance of the Board case and the performance of defendants of any act in pursuance of said hearing does and will cause complainant to suffer irreparable injury.

*Court's Conclusions and Reasons Therefor.*

Since the complaint is drawn upon the theory that each of the three defendants is in this litigation in three ways, "individually," "officially," and "as the Board," it will be well to make an early examination of the situation with that especially in mind. In the first place, neither of the defendants purport to have any relation to the subject-matter in any individual capacity. To regard them as acting in their individual capacities would require, first, the determination by this court that the act is wholly void and that they are acting without any authority

whatever, or, as counsel for complainant states, as though the act never existed. Of course, I cannot begin with that premise, because there is a presumption of great weight that an act of Congress is valid. Consistent with the complaint, counsel for the complainant in their oral argument contended that service upon these defendants was tantamount to service upon the Board, and that the Board is in reality before this court, and therefore, it would seem, subject in a practical sense to this court's process, through process upon these defendants. This seems to lead us into strange and inconsistent positions. If the Board, by its members, were actually made parties here in the usual manner, the cause would have to be dismissed as to them, as they cannot be sued in this jurisdiction without their consent, which is lacking. If they are not parties, the real and overwhelmingly important relief sought by the complainant, to wit, restraint of the Board, cannot be directly granted. · I know of no legal method of resolving away the right of the members to be sued in the proper jurisdiction by a judicial fusing of the Board status with that of their limited power of agency. They purport to be acting in their official capacity, that is, as regional director, trial examiner, and attorney, respectively. In such capacities only should I consider them until it appears that they occupy some other additional or different status, and I think it never so appears in this case.

*Most of Relief Sought Is against Board.*

A reading of the bill of complaint, together with the briefs and transcribed oral argument, leaves no uncertainty that the Board (or its members) is the real party against whom complainant desires relief and accounts for the broadly encompassing allegations as to defendants' capacities—an effort to include the Board as the alter ego of defendants. Reference is made to but a few passages.

From paragraph 2 of the complaint: "Said Madden, Carmody and Smith (Members of the Board) would appear to be proper parties defendant herein, but are not necessary parties defendant herein and are not named parties defendant because they are not personally within the jurisdiction of this honorable court. Although said Madden, Carmody and Smith have not been named as parties defendant herein for the foregoing reason, complainant desires to have them granted the right to become parties defendant herein with all of the rights of parties defendant and not limited to an appearance before this court as amici curiæ, or in any other capacity with rights inferior to those of actual parties defendant herein."

The complaint digests the so-called unfair labor practices named in the act. It then alleges that the purpose of the hearing is to determine whether or not complainant herein has engaged in such unfair practices; that, if the Board does determine such to be the fact, then it will issue the cease and desist order. It is alleged that in the main the so-called unfair practices are not such at all, and the action of the Board is but intermeddling and interfering with complainant's business, "in charging complainant with engaging in unfair labor practices the *National Labor Relations Board is holding complainant* up to public scorn as a violator of a law of the United States and thereby is causing it to incur the ill will of the public and to be in disrepute, and is holding complainant up to the scorn of its employees and the public as an employer engaged in unfair labor practices. * * *" (I greatly doubt the sufficiency of the allegations quoted as support for an injunction to prevent irreparable injuries. Hughes v. Federal Trade Commission, 61 App.D.C. 386, 63 F.(2d) 362; Chamber of Commerce v. Federal Trade Commission (C.C.A.) 280 F. 45; Richmond Hosiery Mills v. Camp (C.C.A.) 74 F.(2d) 200.) That the conditions alleged constitute a cloud that complainants have a right to have removed. (But see reference later herein to Appalachian Electric Power Company v. Smith (C.C.A.) 67 F.(2d) 451.) There is an allegation to the effect that dissatisfaction among the workmen will result from the investigations of the Board. It is alleged that the investigation will reveal trade secrets and interfere with complainant's business, that to resist will cost money and subject officers of complainant to large fines, and that it has no adequate remedy at law or equity except the one it is pursuing here. All of these allegations are of a general nature.

The prayer asks that all of this be prevented and that a declaratory judgment be ordered. The overwhelmingly main theory of the complaint is that the *Board* shall be restrained through a declaration that the act is unconstitutional.

*Investigatory Powers.*

There are certain allegations in the complaint that may be related to these defendants, in their official capacities as servants or agents of the Board, which I shall comment upon. These are confined almost wholly to the investigatory powers. In the first place, it is shown by affidavit that Nylander no longer has anything to do with the matter, since on the 4th day of January, 1936, or before the amended bill was filed, the case was transferred from the Twenty-First region directly to the Board. Since Nylander never has assumed to act in any way but in his official capacity as regional director and is not now assuming to act in any capacity, we need consider him no further.

McWilliams as trial examiner and Janofsky as attorney have the power to make investigations, examine and copy records of complainant against the will of, and against the alleged rights of, complainant.

It must be presumed that these men will attend to their duties intelligently and reasonably.° Indeed, counsel for complainant specifically asserted in oral argument that they were not intimating that the defendants would go beyond their duties as they understood them from the provisions of the act. As was said in Chamber of Commerce of Minneapolis v. Federal Trade Commission (C.C.A.) 280 F. 45, 48: "The law does not contemplate that Commissions of this nature will act arbitrarily nor without probable cause."

This is an action in equity, and complainant alleges what it thinks will, or might, happen unless this court stays the hands of these defendants, who intend to hold a meeting according to the act. It will be appropriate, therefore, to inquire just what can happen or just what these defendants can do. But not what the Board can do, for its members are not parties.

Under the terms of the act, they have access to files of the complainant and may copy therefrom for evidence. But the pleadings and the argument in this case reveal little factual difference between the complainant and the workers. Under the facts alleged, there can be no need for going into the complainant's plant for evidence, and it will not be presumed that these defendants will do this unnecessary and useless thing. So far as the complainant is concerned, it does not deny that it refuses to comply, and admits it is not complying, with the statute's requirement of "fair labor practice." It may be that the union has not complied with all of its duties before the remedy of the act can be applied, but this proof or the hearing of evidence upon that issue cannot harm complainant or deprive it of any constitutional right. What issue then is left that would justify any investigation that could disturb complainant's rights? The issue as to whether or not complainant is engaged in interstate commerce is the only one. It does not seem reasonable to assume that the revelation of the kind of work the complainant does could produce any measurable harm, and it is not alleged that it regards this subject as a secret one. The real difficulty, of course, about the kind of commerce complainant is engaged in is legal, and there can be no presumption that these men of standing are going to embarrass complainant by attempting to pry into complainant's trade secrets (they would be irrelevant to any issue) or do other harmful and unnecessary acts. If they do actually attempt such, this court is open for prompt preventive action. The penal section of the act cannot be invoked for every question that complainant might make to mere possible action of defendants, and such charge under it would have to be accompanied by facts that would convince a court of wrongful intent. It is not every wrong that equity will attempt to prevent; the injury must be imminent and substantial.

*The Hearing.*

As for the actual hearing, a careful reading of the act will show that no one can be compelled to attend, without a subpœna having been issued and served upon him, or be compelled to produce evidence without a subpœna duces tecum having been issued and served upon him. Such subpœnas can only be issued by the Board, and, if any of complainant's officers are subpœnaed and it is desired to test the constitutionality of the Board's power to issue them, a safe and summary way is provided by the act. The subpœna can only be enforced through application to the District Court wherein such legal doubt would be considered and decided. No action by the Board or by such court can be taken against the subpœnaed person until after the court's de-

cision and then after a refusal to obey it.

But, further, the affidavit of the trial examiner states that his instructions from the Board are confined to the duties of such office as set out in their rules and regulations, series 1, and to conduct the hearing herein mentioned. The allegations of the complaint do not say that this trial examiner, or any other agent of the Board, has made any effort or attempt to even enter upon the premises of complainant's plant for investigatory purposes or requested that he be permitted to do so. The same may be said of the defendant attorney.

We also have the affidavits of John M. Carmody and Edwin S. Smith, members of the Board, stating that five subpoenas have been granted, directed to employees of complainant, but none have been granted for complainant, or for any of its records, papers, or documents.

We also have the affidavit of J. Warren Madden, a member of the Board, in which it is stated that five subpoenas (for same persons named in the Carmody affidavit) have been requested by the union and they have been issued; that no subpoenas have been requested for complainant, or for its records, papers or documents, and that he has issued none; that under his belief no other subpoenas have been applied for or issued, and that "no such application is at this time intended, contemplated or threatened"; that the Board has no power of enforcement of the penal provisions of the act; that no complaint under any penal section has been referred to the Board; and that the Board has lodged no such complaint with the Attorney General of the United States or the United States district attorney.

We also have the affidavit of Peirson M. Hall, the United States district attorney for this district, in which it is stated that there has been lodged with him no complaint by the Board against complainant, its officers, agents or employees, that he has not threatened to prosecute complainant, its officers, agents or employees, and that he has no present intention of instituting or conducting any prosecution against complainant.

■ Mere possibility of an inconvenience or mere incidental inconvenience in awaiting an inquiry does not entitle one to equitable relief, even though it is claimed that the inquiry is based upon an unconstitutional statute. See Richmond Hosiery Mills v. Camp (C.C.A.) 74 F.(2d) 200.

Counsel for complainant argues that the very pendency of the complaint and the possibility of the hearing prevents the workmen from performing their duties and incites trouble. It is, of course, historically true that, when labor was regarded by the government of its own country as merely one of the several raw materials that went into finished products, it necessarily accepted its condition until open illegal action or revolution broke the bounds. We have happily moved forward and away from this unhealthy and unjust system of economics. Under the true American constitutional doctrine of equality of persons, it rather seems to me that workmen in a large plant are far more likely to bear what they regard as an injustice without resistance, if they may be assured of a consideration of their grievances under governmental action. At any rate, counsel's statement very measurably adds to the idea, and it stands out throughout the pleadings, that the consideration by the Board of the complaint lodged with it constitutes complainant's main fears of injury, rather than any incidental action of the Board's subordinates, the remaining two defendants herein.

*Are Members of the Board Indispensable Parties?*

In reply to the contention of the District Attorney that the action is really against the Board and not against these defendants, and that therefore the Board is an indispensable party, counsel for complainant has cited a number of cases, headed by Colorado v. Toll, 268 U.S. 228, 45 S.Ct. 505, 69 L.Ed. 927. They claim that the principals back of the immediate actor, as here the Board back of the subordinates need not be made parties defendant to an action for injunction, where the constitutionality of the authority upon which the action is assumedly based is questioned. They claim that under such conditions the court will take jurisdiction and decide the constitutional question. But this equasion, although it may be correct as to some cases, does not cover the problem in this case.

■ I undertake to state that in this case the immediate question is not so much one of indispensable parties as it is whether or not equitable relief should be granted as against the actual named parties de-

fendant. It is my firm conviction that this court cannot grant the relief asked for here and could not do so, no matter how it should regard the constitutionality of the act, for the reason that it is essentially relief from others than defendants that complainant wants. If I should take cognizance of the allegations that are herein made against the Board, then unquestionably the Board members would be indispensable parties. However, I believe that this court has jurisdiction to consider this case in so far as it concerns the named defendants. Binderup v. Pathe Exch., 263 U.S. 291, 44 S.Ct. 96, 68 L.Ed. 308.

But, where the feared irreparable injury cannot be produced by the defendants, who are but subordinates with limited power, there is no cause for equitable relief. Whether or not the information gained through the intended hearing will ever be used in a manner to affect complainant is entirely within the discretionary action of the Board.

What these defendants can do, as we have seen, cannot harm complainants. What the Board can do may harm complainant, if his views are correct as to the validity of the Act.

In Moore v. Anderson (C.C.A.) 68 F.(2d) 191, the subordinate could physically have prevented the injury, but he was not under orders to do it. The court found that the relief sought from him could only come from his principal. See, also, Raichle v. Federal Reserve Bank of N. Y. (C.C.A.) 34 F.(2d) 910, 67 A.L.R. 1167.

In Colorado v. Toll, supra, the subordinate's present power to injure was being applied and the equities were against him. The principal had no hand in the act itself, so there was no occasion to inject him into the controversy.

In Berdie v. Kurtz (C.C.A.) 75 F.(2d) 898, and Darger v. Hill (C.C.A.) 76 F.(2d) 198, the defendants against whom the restraint was issued had large discretionary powers directly affecting the complainants. A case of considerable similarity to the Berdie Case is Yarnell v. Hillsborough Packing Co. (C.C.A.) 70 F.(2d) 435, 438. The holding is the same so far as the facts coincide, but in the latter case no relief is allowed, for (and we quote) "injunction does not lie merely because an act is unconstitutional; but one seeking in-

junctive relief on that ground must further show that he is entitled to it on some *clear* ground of equity jurisdiction"; to put it another way, equity will not restrain administrative officers, without a showing that it is necessary to prevent irreparable injury; arbitrary or discriminatory action will never be presumed.

In United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171, the defendant was the actor directly causing the injury. The same situation is present in Panama Refining Company v. Ryan, 293 U.S. 388, 55 S.Ct. 241, 79 L.Ed. 446, and Ferris v. Wilbur (C.C.A.) 27 F.(2d) 262 (cited by complainant) is decided upon another point not germane to this case.

In the Pennsylvania v. West Virginia Case, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300, the action was directed against the Board which would have the enforcement of the statute complained about.

The same condition is present in Village of Euclid v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016. See, also, Warner Valley Stock Co. v. Smith, 165 U.S. 28, 17 S.Ct. 225, 41 L.Ed. 621; Pennsylvania R. R. Co. v. United States Labor Board, 261 U.S. 72, 43 S.Ct. 278, 67 L.Ed. 536. In Boise Artesian Water Company v. Boise City, 213 U.S. 276, 29 S.Ct. 426, 429, 53 L.Ed. 796, a case concerning a franchise to maintain water pipes in a city street, the court, after plainly holding that a case justifying the interposition of equity must be presented in connection with a prayer that a statute be declared unconstitutional, said: "In such a case [steps toward actual removal of pipes from street] it would be the plain duty of the court of equity to arrest the destructive steps until their legality or constitutionality could be determined. * * * It is true that the bill contains a vague allegation that the city has threatened to remove the company's pipes and works from the city, but no facts whatever are alleged showing such a threat."

Of interest is the following statement from Pierce v. Society of Sisters, 268 U.S. 510, 536, 45 S.Ct. 571, 574, 69 L.Ed. 1070, 39 A.L.R. 468: "The suits were not premature: 'The injury to appellees was present and very real, not a mere possibility in the remote future. If no relief had been possible prior to the effective

date of the act, the injury would have become irreparable.' " This case was cited by complainant to the point that his complaint is not premature, a point as to which I hold no difference of opinion so far as it refers to the named defendants. The action, however, must be against the parties whose acts will cause the trouble. The case is in accord.

It seems to me that to succeed in this action complainant must show the court that irreparable injury is immediately threatened by the acts these defendants are about to do, not the Board. I do not think this showing has been made.

*Cloud on Complainant as Alleged in Bill.*
■ The case of Appalachian Electric Power Company v. Smith (C.C.A.) 67 F.(2d) 451, is an outstanding case, covering many of the points urged by complainant in the instant case, especially the one just treated, but, in addition thereto, the question of a cloud upon complainant's title. In order not to add to this already too long opinion, I shall not state the case, but will quote a few passages which seem to be pertinent. At page 455 of 67 F.(2d): "It is well settled that 'a court of equity will not grant an injunction to restrain one from doing what he is not attempting and does not intend to do.' Blease v. Safety Transit Co. (C.C.A.4th) 50 F.(2d) 852, 856. And certainly suit will not be entertained to enjoin the enforcement of an unconstitutional act or order when not brought against the official charged with its enforcement." "As every one must be presumed to know the law, it follows that no order, the invalidity of which is dependent entirely upon legal principles, can constitute a cloud upon title. As said by Mr. Justice Hunt in Hannewinkle v. Georgetown, supra [15 Wall. 547, 21 L.Ed. 231]: 'It has long been held, also, that there exists no cloud upon the title which justifies the interference of a court of equity, where the proceedings are void upon their face, that is, the same record which must be introduced to establish the title claimed, will show that there is no title.' " At page 457 of 67 F.(2d): "What is really sought in the suit before us is, not restraint of the defendants or removal of cloud from title, but a declaratory judgment as to the meaning and constitutionality of certain sections of the Federal Water Power Act and the validity of orders of the Federal Power Commission purporting to be en-

tered under them, a judgment which could grant no relief against any defendant before the court. We are without jurisdiction in such case, not only because we cannot try the rights of the United States 'behind its back' * * * but also because we are without power to render a mere declaratory judgment."

"It is safe to say that no case can be found where this court had deliberately approved the issuance of an injunction against the enforcement of an ordinance resting on state authority, merely because it was illegal or unconstitutional, unless further circumstances were shown which brought the case within some clear ground of equity jurisdiction."

The last quotation was from Justice Holmes in Northport Power & Light Co. v. Hartley, Governor of Washington, et al., 283 U.S. 568, 51 S.Ct. 581, 582, 75 L.Ed. 1275. This leads us logically to the subject of declaratory judgments.

*The Prayer for a Declaratory Judgment.*
■ Pursuant to the tendency of the times in the matter of administering justice the United States through an act of the Seventy-Fourth Congress (48 Stat. 955, c. 512, June 14, 1934, title 28 U.S.C.A. § 400), recognized and authorized declaratory judgments. This sort of relief, it would seem, is peculiarly adapted to this country because of the fact that this nation submits the interpretation and the validity of its statutory enactments to the issue of constitutionality in the courts. It is of great importance that certainty along these lines shall be arrived at as early as possible. But it must not be understood that the courts are authorized to deliver advisory opinions or pronouncements upon abstract questions. Massachusetts v. Mellon, 262 U.S. 447, 43 S.Ct. 597, 67 L.Ed. 1078. There must still be a justiciable controversy between real parties upon real issues. Nashville, Chattanooga & St. Louis R. Co. v. Wallace, 288 U.S. 249, 53 S.Ct. 345, 77 L.Ed. 730, 87 A.L.R. 1191. And such judgment does not become binding on other than the real parties before the court. Thus, before this court can entertain a prayer for declaratory judgment in this case, it must first determine that the moving party is entitled to its injunction against the named defendants. I do not believe this can be done. I should require very definite proof before I would feel justified in granting a declaratory judgment upon the validity of this far-

208

reaching and nationally important statute in this case which could bind only these two administrative subordinates.

*Remedy in Circuit Court.*

In the present circumstances of this case it would seem·that the Circuit Court review provided by the act would afford due process of law. I am not prepared to say, however, that circumstances might not arise in this case, or in any other case, under the subject-matter of the act, that would justify an application to the District Court for relief. And in this connection it is proper to state that counsel for complainant made the point that, if complainant appeared at the hearing and awaited the decision from the Board, he could not be heard to object thereafter to the jurisdiction. Section 16 of the Board's rules and regulations, series 1, specifically permits a motion to dismiss and then provides, in section 17, as follows: "No objection to rulings upon motions shall be deemed waived by the filing of an answer or by other participation in the proceedings before the Trial Examiner or the Board."

I therefore think the District Court is open at all times with jurisdiction to try a case wherein imminent, irreparable injury is properly alleged as to subject-matter and as to parties defendant.

Since the factual dispute in this case is really very limited and the real issues are of a-legal nature, no hardship is visited upon complainant by requiring to go elsewhere for a proper forum. One in which these grave questions can be entertained with the real interested parties before the court in exactly the complete manner in which the complaint alleges almost at the very start, it would welcome the members of the Board in this case.

· 1. The case is dismissed entirely as to Nylander.

2. The motion to dismiss the case is granted in so far as it is attempted to make the Board or the members of the Board parties, and is denied in all other particulars.

3. No relief will be granted complainant, and the order to show cause is quashed.

All italics used herein are mine.

Counsel for defendants will prepare the proper papers according to the tenor of the opinion and submit draft of the same to counsel for complainant.