**ATHENS LUMBER COMPANY, INC.,
et al., Plaintiffs,**

**v.**

**FEDERAL ELECTION COMMISSION,
et al., Defendants.**

**Civ. A. No. 81–79–ATH.**

United States District Court,
M. D. Georgia,
Athens Division.

Feb. 9, 1982.

Emmet J. Bondurant, Atlanta, Ga., for plaintiffs.

Charles N. Steele, Gen. Counsel, Lawrence N. Noble, Asst. Gen. Counsel, Carolyn U. Oliphant, Sp. Asst. Gen. Counsel, Jeffrey H. Bowman, Federal Election Commission, Washington, D. C., Bernard E. Namie, III, Asst. U. S. Atty., Macon, Ga., for defendants.

OWENS, Chief Judge:

On July 27, 1981, Athens Lumber Company, Incorporated, a Georgia corporation with its sole office and place of business in Athens, Georgia, and its president and stockholder, John P. Bondurant, as plaintiffs filed their complaint against defendants the Federal Election Commission and Attorney General William French Smith seeking a declaratory judgment finding 2 U.S.C. § 441b(a), to wit:

> "It is unlawful for any national bank, or any corporation organized by authority of any law of Congress, to make a contribution or expenditure in connection with any election to any political office, or in connection with any primary election or political convention or caucus held to select candidates for any political office, or for any corporation whatever, or any labor organization, to make a contribution or expenditure in connection with any election at which presidential and vice presidential electors or a Senator or Representative in, or a Delegate or Resident Commissioner to, Congress are to be voted for, or in connection with any primary election or political convention or caucus held to select candidates for any of the foregoing offices, or for any candidate, political committee, or other person knowing to accept or receive any contri-

bution prohibited by this section, or any officer or any director of any corporation or any national bank or any officer of any labor organization to consent to any contribution or expenditure by the corporation, national bank, or labor organization, as the case may be, prohibited by this section."

to be constitutionally invalid under the First and Fifth Amendments to the Constitution of the United States.

The complaint alleges that this court has jurisdiction under 28 U.S.C. § 1331,[1] the federal question jurisdictional statute, and 2 U.S.C. § 437h, a provision of the Federal Elections Campaign Act, which states:

> "Judicial review—Actions, including declaratory judgments, for construction of constitutional questions; eligible plaintiffs; certification of such questions to courts of appeals sitting en banc
>
> (a) The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. The district court immediately shall certify all questions of constitutionality, of this Act to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc."

Complainants seek a declaratory judgment as specially provided for in § 437h and as generally provided for in 28 U.S.C. § 2201 which states:

> "Creation of remedy
>
> In a case of actual controversy within its jurisdiction, except with respect to Federal taxes other than actions brought under section 7428 of the Internal Revenue Code of 1954, or a proceeding under section 505 or 1146 of title 11, any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any

---

1. 28 U.S.C. § 1331 provides:
"The district courts shall have original jurisdiction of all civil actions arising under the Consti-

tution, laws, or treaties of the United States."

interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

In their complaint the plaintiffs allege that Athens Lumber Company, Inc.—a manufacturer and seller of architectural millwork and seller of building materials—having been adversely affected in its business by policies, actions and laws of the United States, "desire[s] to exercise rights protected and guaranteed by the First and Fifth Amendments by assisting and promoting the election to federal offices of those persons whom the plaintiffs believe are best qualified to serve the interests of the people of the United States, and, by so doing, to promote the business and welfare of the Athens Lumber Company, Incorporated, its shareholders, customers and suppliers..." (Complaint, para. 7).

Plaintiffs further allege that all the plaintiff corporation's directors and shareholders—plaintiff John P. Bondurant, Mary B. Bondurant, J. P. Bondurant, III, Birdie Bondurant Clower and Emmet J. Bondurant, counsel for plaintiffs—by unanimous action taken on July 23, 1981, have resolved that:

"1. The President of the Company is hereby authorized to expend a maximum of $10,000 through December 31, 1984 to support the election to national office of those persons whom he believes to be best qualified and who will best serve the people of the United States, and the interests of the Company, its employees, shareholders and customers; such candidates may include candidates for election to the United States House of Representatives, the United States Senate, and President or Vice President of the United States or member of the Electoral College to be nominated or elected at any primary, general or special election or political convention at which such candidates are to be nominated or elected held during 1981 through 1984.

"2. No contribution or other gift of money directly to a candidate or to a campaign of a candidate shall exceed $100 per candidate or campaign, without the prior approval of the Board of Directors.

"3. At least 50% of the fund shall be expended by the Company, independently of the campaign of any candidate for public office, on newspaper, radio, and television advertisements endorsing, promoting or opposing the election of specifically identified candidates to federal office.

"4. The President is authorized to include, at the expense of the Company, messages endorsing the positions of and urging the election of specifically identified candidates for federal office, in monthly statements regularly mailed by the Company to its customers and in letters mailed by the Company to its suppliers and persons whom the President may designate.

"5. No contributions or expenditures shall be made for political purposes, either from the special fund provided for in subparagraph 1 above, or from any other funds of the Company, until (a) 2 U.S.C. § 441b(a) is either repealed or declared invalid by a court of competent jurisdiction, and (b) the Company receives an opinion of counsel that the proposed expenditure or contribution does not violate any other valid provision of federal or state law, or any valid regulation of the Federal Election Commission or other regulatory agency.

"6. The President is hereby authorized to employ Trotter, Bondurant, Miller & Hishon to represent the Company and the President in bringing any appropriate suit on behalf of the Company under 2 U.S.C. § 437h(a), and such other statute as may be appropriate seeking a determination of the validity of 2 U.S.C. § 441b(a) by a court of competent jurisdiction." (Exhibit A to Complaint)

Complainants say that each form of political expression provided for by said resolution and that plaintiff corporation intends

to engage in, will constitute a violation of 2 U.S.C. § 441b(a). They further say that they "are afraid to exercise their rights to engage in any of the protected political activities authorized by the unanimous resolution...because of the threat and fear that defendants will attempt to enforce one or more of the sanctions...[provided for in 2 U.S.C. § 437g] against plaintiffs, thereby subjecting plaintiffs to the burden, expense and embarrassment of defending themselves and the potential risk of severe penalties, in the event that the Act's restrictions are held to be valid." (Complaint, para. 13). This uncertainty, they further allege, deters them from exercising their First and Fifth Amendment constitutional rights and has caused and will continue to cause them to suffer irreparable harm. They contend that only a declaratory judgment invalidating § 441b(a) can cause this irreparable harm to cease.

Section 437g, 2 U.S.C., provides for civil enforcement by the Commission of the provision in question through informal methods of conference, conciliation and persuasion, and authorizes the Commission to enter into a conciliation agreement. Under certain circumstances the agreement may require the payment of civil penalties. § 437g(a)(4) and (5). If the Commission is unable to enter into a conciliation agreement, it may institute a civil action in district court for injunctive relief and for imposition of a civil penalty not to exceed $5,000 or the amount of the contribution or expenditure. A showing of a knowing and wilful violation increases the possible civil penalty to the greater of $10,000 or 200% of the contribution or expenditure. § 437g (a)(6). Alternatively, the Commission, if it determines probable cause to believe a knowing and wilful violation of the Act has occurred, may refer the matter to the Attorney General. 437g(a)(5)(C).

Criminal penalties are specified in § 437g(d)(1) through (3), to wit:

"(d)(1)(A) Any person who knowingly and wilfully commits a violation of any provision of this Act which involves the making, receiving, or reporting of any contribution or expenditure aggregating $2,000 or more during a calendar year shall be fined, or imprisoned for not more than one year, or both. The amount of this fine shall not exceed the greater of $25,000 or 300 percent of any contribution or expenditure involved in such violation.

"(B) In the case of a knowing and willful violation of section 316(b)(3), the penalties set forth in this subsection shall apply to a violation involving an amount aggregating $250 or more during a calendar year. Such violation of section 441b(b)(3) of this title may incorporate a violation of section 441c(b), 441f, or 441g of this title.

"(C) In the case of a knowing and willful violation of section 441h of this title, the penalties set forth in this subsection shall apply without regard to whether the making, receiving, or reporting of a contribution or expenditure of $1,000 or more is involved.

"(2) In any criminal action brought for a violation of any provision of this Act or of chapter 95 or chapter 96 of Title 26, any defendant may evidence their lack of knowledge or intent to commit the alleged violation by introducing as evidence a conciliation agreement entered into between the defendant and the Commission under subsection (a)(4)(A) of this section which specifically deals with the act or failure to act constituting such violation and which is still in effect.

"(3) In any criminal action brought for a violation of any provision of this Act or of chapter 95 or chapter 96 of Title 26, the court before which such action is brought shall take into account, in weighing the seriousness of the violation and in considering the appropriateness of the penalty to be imposed if the defendant is found guilty, whether—

(A) the specific act or failure to act which constitutes the violation for which the action was brought is the subject of a conciliation agreement entered into between the defendant and the Commission under subparagraph (a)(4)(A);

(B) the conciliation agreement is in effect; and

(C) the defendant is, with respect to the violation involved, in compliance with the conciliation agreement." (emphasis added)

As the underlined words indicate, criminal penalties are not imposed on § 441b(a) prohibited contributions or expenditures aggregating less than $2,000 during a calendar year.

In responding to the plaintiffs' complaint the defendant Attorney General moved the court to dismiss the plaintiffs' complaint "on the grounds that plaintiffs' complaint fails to set forth a justiciable case and controversy between defendant William French Smith and the plaintiffs." The defendant Federal Election Commission in its responsive pleadings as a first affirmative defense stated, "This court lacks subject matter jurisdiction over this action as there is no case or controversy, and 28 U.S.C. § 1331 and 2201 do not confer jurisdiction." Pursuant to this court's local rules each party has submitted its briefs of law on these motions and they are now ready for decision.

### 2 U.S.C. § 437h(a)

■ From the outset plaintiffs have urged and later moved this court to immediately certify all questions of constitutionality in this case to the Eleventh Circuit Court of Appeals for an expedited *en banc* hearing pursuant to 2 U.S.C. § 437h(a) which provides:

"The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions in the appropriate district court of the United States, including actions for declaratory judgment, as may be appropriate to construe the constitutionality of any provision of this Act. *The district court immediately shall certify all questions of constitutionality of this Act* to the United States court of appeals for the circuit involved, which shall hear the matter sitting en banc." (emphasis added)

In doing so the plaintiffs in effect suggest that this district court, because of the mandate of § 437h(a) is required to immediately certify the constitutional questions as framed by the plaintiffs to the Eleventh Circuit Court of Appeals sending with its certification the entire record of this case and leaving all questions including these motions to be decided by the court of appeals. Defendants urge this court to grant their motions to dismiss and thus find that there is no case or controversy to be certified to the court of appeals under § 437h or to be considered under 28 U.S.C. § 2201, the general declaratory judgment statute.

Section 437, 2 U.S.C. and 28 U.S.C. § 2201 confer jurisdiction upon the district courts for the filing of complaints or actions for declaratory judgment. Since 2 U.S.C. § 437h provides for certification to and expedited consideration by the court of appeals sitting *en banc* and for direct appeal to the Supreme Court of the United States, and since, on the other hand, 28 U.S.C. § 2201 provides for the matter to proceed at a slower pace to conclusion and judgment in the district court and for appeal to the court of appeals but not for *en banc* consideration or for direct appeal to the Supreme Court, plaintiffs naturally prefer and stress the expeditious 2 U.S.C. § 437h procedure.

The question of whether or not these plaintiffs have standing to invoke the expeditious procedure of 2 U.S.C. § 437h has been argued only by the Federal Election Commission.[2] As suggested by the Commission, the court notes that § 437h states, "The Commission, the national committee of any political party, or any individual eligible to vote in any election for the office of President of the United States may institute such actions..." Since the plaintiff corporation is ineligible to vote and not otherwise described as a proper party, it seems to this court that § 437h's expedited procedures are not available to

---

**2.** By letter dated February 10, 1982, from the Department of Justice, the court was advised that both defendants take the same position.

the plaintiff corporation. On the other hand, John P. Bondurant, corporate president, stockholder and director, is an individual eligible to vote and thus possibly a proper party to a § 437h action.

In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) the Supreme Court carefully and at great length considered the constitutionality of virtually every portion of the Federal Elections Campaign Act except 2 U.S.C. § 437 and its subparts, including § 437h. The Court sustained the constitutional validity of the Act's individual contribution limits, disclosure and reporting provisions and public financing scheme, but found the Act's limitations on campaign expenditures, on independent expenditures by individuals and groups and on expenditures by a candidate from his personal funds to all be constitutionally infirm. Mr. Bondurant, as an individual, is thus free to independently expend his personal funds, including dividends from the corporate plaintiff, without limitation. His only possible interest as an individual in this action must then necessarily be in using corporate funds on which corporate income taxes have been paid, but on which the additional personal income taxes due on corporate dividends have not been paid, for political expenditure purposes. Since such expenditures would be solely by the corporation, it further seems that only the corporation is the real party in interest and the only proper party to prospectively attack the prohibitions of 2 U.S.C. § 441b(a); its only available procedure since corporations are not encompassed by § 437h is the non-expedited 28 U.S.C. § 2201 declaratory judgment provision.

In considering defendants' motions to dismiss based upon defendants' contention that the plaintiffs' complaint fails to set forth a justiciable case or controversy between the plaintiffs and the defendants, it is unnecessary to decide whether or not the expeditious § 437h declaratory judgment procedure and/or the 28 U.S.C. § 2201 declaratory judgment procedure is available to these plaintiffs since both procedures require this court to find an Article III justiciable case or controversy between the

plaintiffs and the defendants for the case to be within this court's jurisdiction.

In *Buckley v. Valeo*, 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) which, as already mentioned, involved a § 437h challenge to the greater part of the Act excepting only § 441 and its subparts, the Supreme Court first considered whether or not an Article III justiciable case or controversy existed. In doing so the Court said:

"At the outset we must determine whether the case before us presents a 'case or controversy' within the meaning of Art. III of the Constitution. Congress may not, of course, require this Court to render opinions in matters which are not 'cases or controversies.' *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241, 81 L.Ed. 617, 57 S.Ct. 461 [463–464], 108 ALR 1000 (1937). We must therefore decide whether appellants have the 'personal stake in the outcome of the controversy' necessary to meet the requirements of Art. III. *Baker v. Carr*, 369 U.S. 186, 204, 7 L.Ed.2d 663, 82 S.Ct. 691 [703] (1962). *It is clear that Congress, in enacting 2 U.S.C. § 437h* (1970 ed. Supp. IV) [2 U.S.C.S. § 437h], *intended to provide judicial review to the extent permitted by Art. III.* In our view, the complaint in this case demonstrates that at least some of the appellants have a sufficient 'personal stake' in a determination of the constitutional validity of each of the challenged provisions to present 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' *Aetna Life Ins. Co. v. Haworth*, supra, at 241, 81 L.Ed. 617, 57 S.Ct. 461 [at 464], 108 A.L.R. 1000." 424 U.S. 1 at 11, 96 S.Ct. 612 at 631, 46 L.Ed.2d 683 (1976),

and in footnote 11 answered one of the questions certified by the court of appeals as follows:

"Does the first sentence of § 315(a) of the Federal Election Campaign Act, as

amended, 2 U.S.C. § 437h(a) (1970 ed. Supp. IV), [2 U.S.C.S. § 437h(a)], in the context of this action, require courts of the United States to render advisory opinions in violation of the 'case or controversy' requirement of Article III, § 2, of the Constitution of the United States? NO."

*Aetna Life Ins. Co. v. Haworth, supra,* decided in 1936, discussed the "case or controversy" requirement as applied to actions for a declaratory judgment. There the Court said:

"First.—The Constitution limits the exercise of the judicial power to 'cases' and 'controversies.' 'The term "controversies," if distinguishable at all from "cases," is so in that it is less comprehensive than the latter, and includes only suits of a civil nature.' Per Mr. Justice Field in *Re Pacific R. Commission* (C. C.) 12 Sawy, 559, 32 F. 241, 255, citing *Chisholm v. Georgia,* 2 Dall. 431, 432, 1 L.Ed. 445, 446. See *Muskrat v. United States,* 219 U.S. 346, 356, 357, 55 L.Ed. 246, 250, 251, 31 S.Ct. 250 [253, 254]; *Old Colony Trust Co. v. Commissioner of Internal Revenue,* 279 U.S. 716, 723, 724, 73 L.Ed. 918, 925, 926, 49 S.Ct. 499 [501, 502]. The Declaratory Judgment Act of 1934, in its limitation to 'cases of actual controversy,' manifestly has regard to the constitutional provision and is operative only in respect to controversies which are such in the constitutional sense. The word 'actual' is one of emphasis rather than of definition. Thus the operation of the Declaratory Judgment Act is procedural only. In providing remedies and defining procedure in relation to cases and controversies in the constitutional sense the Congress is acting within its delegated power over the jurisdiction of the federal courts which the Congress is authorized to establish. *Turner v. Bank of North America,* 4 Dall. 8, 10, 1 L.Ed. 718, 719; *Stevenson v. Fain,* 195 U.S. 165, 167, 49 L.Ed. 142, 143, 25 S.Ct. 1 [6, 7]; *Kline v. Burke Constr. Co.,* 260 U.S. 226, 234, 67 L.Ed. 226, 232, 43 S.Ct. 79 [82], 24 A.L.R. 1077. Exercising this control of practice and procedure the Congress is not con-

fined to traditional forms or traditional remedies. The judiciary clause of the Constitution 'did not crystallize into changeless form the procedure of 1789 as the only possible means for presenting a case or controversy otherwise cognizable by the federal courts.' *Nashville, C. & St. L. R. Co. v. Wallace,* 288 U.S. 249, 264, 77 L.Ed. 730, 733, 53 S.Ct. 345 [348], 87 A.L.R. 1191. In dealing with methods within its sphere of remedial action the Congress may create and improve as well as abolish or restrict. The Declaratory Judgment Act must be deemed to fall within this ambit of congressional power, so far as it authorizes relief which is consonant with the exercise of the judicial function in the determination of controversies to which under the Constitution the judicial power extends.

"A 'controversy' in this sense must be one that is appropriate for judicial determination. *Osborn v. Bank of United States,* 9 Wheat. 738, 819, 6 L.Ed. 204, 223. A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. *United States v. Alaska S. S. Co.,* 253 U.S. 113, 116, 64 L.Ed. 808, 809, 40 S.Ct. 448. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. *South Spring Hill Gold Min. Co. v. Amador Medean Gold Co.,* 145 U.S. 300, 301, 36 L.Ed. 712, 713, 12 S.Ct. 921; *Fairchild v. Hughes,* 258 U.S. 126, 129, 66 L.Ed. 499, 504, 42 S.Ct. 274 [275]; *Massachusetts v. Mellon,* 262 U.S. 447, 487, 488, 67 L.Ed. 1078, 1085, 43 S.Ct. 597 [601]. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.... Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exer-

cised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages. *Nashville, C. & St. L.R. Co. v. Wallace,* supra (288 U.S. p. 263, 77 L.Ed. 735, 53 S.Ct. 345 [348], 87 A.L.R. 1191); *Tutun v. United States,* 270 U.S. 568, 576, 577, 70 L.Ed. 738, 741, 742, 46 S.Ct. 425 [426]; *Fidelity Nat. Bank & T. Co. v. Swope,* 274 U.S. 123, 132, 71 L.Ed. 959, 964, 47 S.Ct. 511 [514]; *Old Colony Trust Co. v. Commissioner of Internal Revenue,* supra (279 U.S. p. 725, 73 L.Ed. 926, 49 S.Ct. 499 [502]). And as it is not essential to the exercise of the judicial power that an injunction be sought, allegations that irreparable injury is threatened are not required. *Nashville, C. & St. L. R. Co. v. Wallace,* supra, 288 U.S. 264, 77 L.Ed. 736, 53 S.Ct. 345 [348], 87 A.L.R. 1191."

The Court in finding the existence of a justiciable controversy considered "the nature of the controversy, the relation and interests of the parties, and the relief sought..." *Id.*

What is the nature of their controversy?

As defendants point out, the plaintiff family closely held corporation has resolved to expend corporate funds for purposes prohibited by 2 U.S.C. § 441b(a) but has directed that no such expenditures be made until "2 U.S.C. § 441b(a) is either repealed or declared invalid by a court of competent jurisdiction, and (b) the Company receives an opinion of counsel that the proposed expenditure or contribution does not violate any other valid provision of federal or state law, or any valid regulation of the Federal Election Commission or other regulatory agency." (Exhibit A, para. 5). Defendants say that plaintiffs have done nothing more than create a hypothetical situation with the hope that the courts of these United States will render an advisory opinion on their proposed course of conduct.

Plaintiffs citing *First National Bank of Boston v. Bellotti,* 435 U.S. 765, 98 S.Ct. 1407, 55 L.Ed.2d 707 (1978) assert that the plaintiff corporation has standing to attack § 441b(a) because its intentions are to expend corporate funds and its exposure to civil and criminal sanctions is equal to those of *First National Bank of Boston* which the Supreme Court found adequate to give the bank standing on First Amendment grounds to challenge a Massachusetts election law prohibiting corporate speech. Unfortunately for this court the Supreme Court in *First National Bank of Boston v. Bellotti* did not discuss the question of whether or not a justiciable controversy existed. On the other hand, the Court in deciding that the election that the bank desired to speak about having been held did not moot the case, did observe:

"Nor can there be any serious doubt that there is a 'reasonable expectation,' *Weinstein v. Bradford,* supra [423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350], that appellants again will be subject to the *threat of prosecution under § 8.* The 1976 election marked the fourth time in recent years that a proposed graduated income tax amendment has been submitted to the Massachusetts voters. Appellee's suggestion that the legislature may abandon its quest for a constitutional amendment is purely speculative. Appellants insist that they will continue to oppose the constitutional amendment, and *there is no reason to believe that the Attorney General will refrain from prosecuting violations of § 8.* Compare *Nebraska Press Assn. v. Stuart,* 427 U.S. 539, 546–547, 49 L.Ed.2d 683, 96 S.Ct. 2791 [2796–2797] (1976), with *Spomer v. Littleton,* 414 U.S. 514, 521, 38 L.Ed.2d 694, 94 S.Ct. 685 [689] (1974).

"Meanwhile, § 8 remains on the books as a complete prohibition of corporate expenditures related to individual tax referenda, and as a restraining influence on corporate expenditures concerning other ballot questions. *The criminal penalties of § 8 discourage challenge by violation,* and the effect of the statute on arguably protected speech will persist. *Storer v. Brown,* 415 U.S. 724, 737 n.8, 39 L.Ed.2d 714, 94 S.Ct. 1274 [1282 n.8] (1974); see *American Party of Texas v. White,* 415 U.S. 767, 770 n.1, 39 L.Ed.2d

744, 94 S.Ct. 1296 [1301 n.1] (1974); *Rosario v. Rockefeller*, 410 U.S. 752, 756 n.5, 36 L.Ed.2d 1, 93 S.Ct. 1245 [1249 n.5] (1973); *Dunn v. Blumstein*, 405 U.S. 330, 333 n.2, 31 L.Ed.2d 274, 92 S.Ct. 995 [998 n.2] (1972). Accordingly, we conclude that this case is not moot and proceed to address the merits." 435 U.S. at 774, 55 L.Ed.2d at 716, 98 S.Ct. at 1415. (emphasis added).

thereby intimating that the certainty of future criminal prosecution discourages constitutional challenge by violation of the statute and creates a justiciable controversy.

■ Unlike the criminal statute that created an on-going threat of prosecution in *First National Bank of Boston v. Bellotti*, the Act that these plaintiffs seek to attack on constitutional grounds contains both civil and criminal sanctions and, as already pointed out, its criminal sanctions for violation of § 441b(a) do not apply on corporate contributions or expenditures aggregation less than $2,000.00 during a calendar year. § 437g(d)(1) through (3). Unlike the First National Bank of Boston and its officers and directors, the Athens Lumber Company, Inc., its president, John P. Bondurant, and its officers and directors can expend less than $2,000 of corporate funds during a calendar year for the purposes prohibited by § 441b(a), expose themselves only to possible civil penalties and create a real controversy with the defendant Federal Election Commission and, assuming the Commission refers the violation to the Attorney General, also with the Attorney General. *First National Bank of Boston v. Bellotti* does not therefore require a finding of a justiciable case or controversy in this case.

What determines the existence or non-existence of a justiciable case or controversy in a case like this where plaintiffs, because of anticipated misconduct, seek to institute a First Amendment constitutional challenge? A concise summary of the law on this question is found in *International Society for Krishna Consciousness v. Eaves*, 601 F.2d 809 (5th Cir. 1979), at 817:

"Justiciability is a notably amorphous notion, 'a concept of uncertain meaning and scope.' *Flast v. Cohen*, 392 U.S. 83, 95, 88 S.Ct. 1942, 1950, 20 L.Ed.2d 947 (1968). It has at least two distinct components. One is jurisdictional, the Article III requirement that federal courts decide only 'cases' and 'controversies.' The other consists of 'policy considerations,' id. at 97, 88 S.Ct. 1942 [at 1951], not specified in the Constitution but bearing on whether it is appropriate to permit a particular case to be litigated in a federal court at a particular time. See generally *Socialist Labor Party v. Gilligan*, 406 U.S. 583, 588–89, 92 S.Ct. 1716 [1719–20], 32 L.Ed.2d 317 (1972). This component is 'not always clearly distinguished from the constitutional limitation.' See *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S.Ct. 1031, 1034, 97 L.Ed. 1586 (1953).

"The constitutional requirement of a case or controversy is rooted in *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 2 L.Ed. 60 (1803). It is an especially crucial limit on the power of a federal court faced with an anticipatory challenge like appellants'. 'The power and duty of the judiciary is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision .... *Marbury v. Madison* .... But this vital responsibility, broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws ....' *Younger v. Harris*, 401 U.S. 37, 52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971); see *Broadrick v. Oklahoma*, 413 U.S. 601, 610–11, 93 S.Ct. 2908 [2914–15], 37 L.Ed.2d 830 (1973); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803). In other words, a plaintiff must not be allowed to enlist the aid of a federal court in a general effort to purge unconstitutional measures from the body of the law. See, e.g., *United States v. Richardson*, 418 U.S. 166, 173, 94 S.Ct. 2940 [2944], 41 L.Ed.2d 678 (1974); *Boyle v. Landry*, 401 U.S. 77, 81, 91 S.Ct. 758 [760], 27 L.Ed.2d 696 (1971). To say this is not by any means to suggest that we should be hos-

tile to anticipatory challenges; they play a most vital role in modern efforts to enforce constitutional rights. 'It is not necessary that [a party] first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.' *Steffel v. Thompson*, 415 U.S. 452, 459, 94 S.Ct. 1209, 1216, 39 L.Ed.2d 505 (1974). But the premise of *Marbury v. Madison* requires us to insist that an anticipatory challenge to statute's constitutionality grow out of a 'real, substantial controversy between parties … a dispute definite and concrete.' *Babbitt v. UFW*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979), quoting *Railway Mail Association v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483 [1487], 89 L.Ed. 2072 (1945).

"In deciding whether such a dispute exists, courts have traditionally focused on each of the parties in turn. They have asked whether the plaintiff is seriously interested in disobeying, and the defendant seriously intent on enforcing, the challenged measure. Some courts have held that no case or controversy exists if either of these elements is missing. See, e.g. *Rincon Bank of Mission Indians v. County of San Diego*, 495 F.2d 1, 4–6 (9th Cir.), cert. denied, 419 U.S. 1008, 95 S.Ct. 328, 42 L.Ed.2d 283 (1974). But we think the second aspect of this inquiry—focusing on the probability of enforcement—is relevant only to the non-jurisdictional, 'policy considerations' underlying justiciability and not to the existence of a case or controversy. There are, to be sure, several important reasons for insisting on some significant likelihood that the defendant government will enforce the statute if it is violated. A defendant uninterested in enforcing a statute is less likely to provide a vigorous defense of its constitutionality, see generally *Poe v. Ullman*, 367 U.S. 497, 501–02, 81 S.Ct. 1752 [1754–55], 6 L.Ed.2d 989 (1961) (plurality opinion); see also *Singleton v. Wulff*, 428 U.S. 106, 114, 96 S.Ct. 2868, 2874, 49 L.Ed.2d 826 (1975); prosecutors should be permitted, and perhaps encouraged, to refuse to enforce unconstitutional laws, see e.g., *Ex parte La Prade*, 289 U.S. 444, 458–59, 53 S.Ct. 682 [685–86], 77 L.Ed. 1311 (1933); see also *Spomer v. Littleton*, 414 U.S. 514, 94 S.Ct. 685, 38 L.Ed.2d 694 (1974); and for related educative reasons, challenges to laws that have fallen into disuse should be directed to the political branches, with the judiciary intervening only after the other branches reexamine and reaffirm such measures by resuming enforcement. But these do not appear to be jurisdictional arguments; they do not speak to the concerns of the premise derived from *Marbury v. Madison.*[6] Indeed there is clear Supreme Court authority that the probability of enforcement is not relevant to a court's jurisdiction over an anticipatory challenge. *Epperson v. Arkansas*, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968), was an appeal of right under 28 U.S.C. § 1257(2) from a state court's dismissal of an anticipatory challenge. The statute under attack prohibited public school teachers from teaching evolution. The Court noted that '[t]here is no record of any prosecutions in Arkansas under its statute. It is possible that the statute is presently more a curiosity than a vital fact of life ….' Id. at 101–02, 89 S.Ct. at 269. Nevertheless, the Court accepted jurisdiction and—apparently believing that § 1257(2) required it to decide all appeals of which it had jurisdiction and precluded it from denying review for 'policy' reasons—reversed on the merits. The Supreme Court, like every federal court, is of course limited by Article III. Thus *Epperson* implicitly holds that the probability of a statute's being enforced, however important it is to the nonjurisdictional, 'policy' component of justiciability, is not relevant to whether an anticipatory challenge presents a case or controversy sufficient to establish federal jurisdiction.

"When we decide whether a case or controversy exists, then, we must focus on the plaintiff's interest in 'engag[ing] in a course of conduct, arguably affected with a constitutional interest, but pro-

scribed by a statute.' *Babbitt v. UFW*, 442 U.S. 289, 303, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895 (1979). While many varieties of plaintiffs can qualify to raise anticipatory claims, see e.g., *Doran v. Salem Inn*, 422 U.S. 933, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), the Supreme Court has been most willing to allow anticipatory claims by plaintiffs who allege that they wish to violate the challenged statute because of their active membership in some profession or organization that has goals apart from the extirpation of unconstitutional measures. Compare *Babbit v. UFW*, 442 U.S. 289, 300–01, 99 S.Ct. 2301, 2309–10, 60 L.Ed.2d 895 (1979); *Buckley v. Valeo*, 424 U.S. 1, 7–8, 12 & n. 10, 96 S.Ct. 612 [629, 631 & n. 10], 46 L.Ed.2d 659 (1976); *United States Civil Service Commission v. National Association of Letter Carriers*, 413 U.S. 548, 551–53, 93 S.Ct. 2880 [2883–84], 37 L.Ed.2d 796 (1973) (decided on merits without discussing jurisdiction); *Doe v. Bolton*, 410 U.S. 179, 188, 93 S.Ct. 739 [745], 35 L.Ed.2d 201 (1973); *Lake Carriers' Association v. MacMullan*, 406 U.S. 498, 506–07, 92 S.Ct. 1749 [1755], 32 L.Ed.2d 257 (1972); and *Epperson v. Arkansas*, 393 U.S. 97, 100–02, 89 S.Ct. 266 [268–69], 21 L.Ed.2d 228 (1968), with *Steffel v. Thompson*, 415 U.S. 452, 459–60, 94 S.Ct. 1209 [1215–16], 39 L.Ed.2d 505 (1974), and *Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969). See *Sierra Club v. Morton*, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972) (plaintiff's long-standing concern with issue, by itself, is insufficient to confer jurisdiction). The Court has never been explicit about this practice, but the reasons for it are clear. If we are to be faithful to the premise derived from *Marbury v. Madison*, we cannot always be satisfied by a plaintiff's formal allegation that he wishes to violate the challenged statute, for such an allegation could be honestly made by a plaintiff interested only in sweeping unconstitutional legislation from the statute books. See generally *Laird v. Tatum*, 408 U.S. 1, 13–15, 92

S.Ct. 2318 [2325–26], 33 L.Ed.2d 154 (1972). We can be most certain that a constitutional challenge grows out of a genuine dispute—and is not a contrivance prompted solely by a desire to enforce constitutional rights—if we know that the alleged unconstitutional statute interferes with the way the plaintiff would normally conduct his affairs. Of course anticipatory challenges should be allowed in a variety of other circumstances. But usually it is sufficient, although not necessary, that the plaintiff have a role in an organization dedicated in part to activities proscribed by the challenged statute and assertedly protected by the Constitution."

---

[6] The probability of enforcement seems relevant to these concerns in only one way. If there is no serious possibility that a statute will be enforced against him, a plaintiff with a genuine independent interest in'acting in the way it proscribes will probably do so. A plaintiff who does not act but instead challenges its constitutionality is, therefore, more likely to be raising the constitutional claim simply because he wants to enforce his constitutional rights, not for reasons connected to any genuine concrete dispute. The premise of *Marbury v. Madison*, of course, does not permit a constitutional claim to be raised in this fashion. But any probability of enforcement, however small, may deter even a genuinely interested plaintiff. And a conscientious citizen may be unwilling to break any law that has not been repealed or invalidated, even if he believes it to be unconstitutional.

■ Focusing on the interest of plaintiff Athens Lumber Company, Inc. and its plaintiff president in "engag[ing] in a course of conduct, arguably affected with a constitutional interest, but proscribed by a statute . . .," *Babbit v. Farm Workers*, 442 U.S. 289, 298, 99 S.Ct. 2301, 2309, 60 L.Ed.2d 895, 906 (1979), it is obvious that the statute under attack in no way interferes with the way that the plaintiff corporation through its plaintiff president conducts its corporate affairs—its business of manufacturing and selling architectural millwork and of selling building materials. These plaintiffs do not even allege that corporately they have a role in any organization that is dedicated in whole or in part to activities prohibited by § 441b(a) and allegedly protected by the

First and Fifth Amendments. Considering the absence of such possible interference in the normal affairs of this corporation, it is difficult to perceive how plaintiffs' complaint is anything more than an effort "to enlist the aid of [this] federal court in a general effort to purge unconstitutional measures from the law."

As the quoted portion of *International Society for Krishna Consciousness v. Eaves* reminds us,

> "The power and duty of the judiciary is in the final analysis derived from its responsibility for resolving concrete disputes brought before the courts for decision .... *Marbury v. Madison* .... But this vital responsibility, broad as it is, does not amount to an unlimited power to survey the statute books and pass judgment on laws ...." *Younger v. Harris,* 401 U.S. 37, 52, 91 S.Ct. 746, 754, 27 L.Ed.2d 669 (1971); see *Broadrick v. Oklahoma,* 413 U.S. 601, 610–11, 93 S.Ct. 2908 [2914–15], 37 L.Ed.2d 830 (1973); *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 178, 2 L.Ed. 60 (1803).

There being an absence of such a concrete dispute between these plaintiffs and these defendants, the justiciable case or controversy that must exist for this court to have jurisdiction of this complaint is totally lacking, because of which defendants' motions to dismiss must be granted. To hold otherwise would put this court in the position of rendering advisory opinions in violation of Article III's "case or controversy" requirement.

Defendants' motions to dismiss are therefore GRANTED.